1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
2

3    ----------------------------X
                                 :
4    UNITED STATES OF AMERICA    :
                                 :  10-CR-147
5                                :
                v.               :  March 12, 2010
6                                :  Brooklyn, New York
     EDWARD GAROFALO,            :
7                                :
                  Defendant.     :
8    ----------------------------X

9

10       TRANSCRIPT OF CRIMINAL CAUSE FOR DETENTION HEARING
            BEFORE THE HONORABLE STEVEN M. GOLD
11              UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13

14   For the Government:        MICHAEL TREMONTE, ESQ.
                                AMY BUSA, ESQ.
15                              ASSISTANT U.S. ATTORNEY
                                225 Cadman Plaza East
                                Brooklyn, New York  11201
16

17
     For the Defendant:         JEAN MARIE GRAZIANO, ESQ.
18

19

20
     Court Transcriber:         SHARI RIEMER
21                              TypeWrite Word Processing Service
                                211 N. Milton Road
22                              Saratoga Springs, New York 12866

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

1   (Proceedings began at 11:23 a.m.)

2            THE CLERK: Criminal Cause for a Detention Hearing,

3   Case Number 10-0147, United States v. Edward Garofalo.

4            Counsel, your name for the record.

5            MR. TREMONTE: Michael Tremonte and Amy Busa for the

6   United States.  Good morning, Your Honor.

7            MS. GRAZIANO:  Jean Marie Graziano and --

8            MR. MATTHEWS: Michael Matthews.

9            MS. GRAZIANO: For the defendant, Your Honor.

10           THE COURT: Good morning.  Mr. Garofalo, do you speak

11  and understand English?

12           THE DEFENDANT: Yes.

13           THE COURT: All right.  As I understand it, the

14  defendant has -- was arraigned on the indictment last week.  I

15  see a temporary order of detention was issued at that time.

16           MS. GRAZIANO: Yes, Your Honor.

17           THE COURT: I have before me -- so everybody knows

18  what I have and if there's more that I should have that I

19  don't you can tell me.  I have a memorandum of law from the

20  prosecution, or at least it is so styled.  It is [inaudible].

21  That's dated March 9th and I have two letters dated March 12th;

22  one from Ms. Graziano and one from the Government.  Is that

23  the scope of the material I should have before me?

24           MS. GRAZIANO: Yes, Your Honor.  My letter has two

25  attachments.

3

1          THE COURT: Let me make sure I have them both.

2                    [Pause in proceedings.]

3          THE COURT: I have one attachment which is like a

4    list of suretors and I have another which is a letter from

5    Surgical Specialists.  So those are the two you intended --

6          MS. GRAZIANO: Yes, Your Honor.

7          THE COURT: Thank you.  Yes, I'm familiar with them.

8          Does the Government wish to add anything to what's

9    in its written presentation?

10          MR. TREMONTE: Yes, Your Honor.  I'd like to address

11   some of the points made in defense counsel's letter of this

12   morning if I may.  I'll take them in the order in which they

13   appear in the letter.

14          Ms. Graziano asserts that the Government proffers

15   that Mr. Garofalo is a threat to the community.  Yet it's not

16   alleged that Mr. Garofalo engaged in actual violence in

17   connection with this case.  I just want to point out that in

18   fact the Government does allege threatened violence in

19   connection with two charges, the attempted extortion of John

20   Doe Number 1 and a conspiracy and attempted extortion of John

21   Doe Number 2.  I want to make sure that that's clear.

22          Also that a number of the incidents of violence that

23   are described in the detention memorandum which date back to

24   the period of 2004 to 2005 took place during the time when Mr.

25   Garofalo was involved in operating Big R Trucking.  That is

4

1  the trucking company that was used together with other shell

2  companies to engage in criminal activity that's charged in the

3  indictment.   Specifically double breasting in violation of

4  Section 664.

5         We would of course happily play for Your Honor the

6  recording that's referenced in defense counsel's letter and

7  any other recording that we reference in our detention memo.

8  However, I want to make clear that I don't think it matters.

9  The defense does not contest the Government's excepted

10  transcript of the recording which is at Pages 21 and 22 of the

11  detention memorandum, and I just would point out that there

12  Mr. Garofalo says in connection with the incident "Tell him to

13  meet us over there," and refers to another organized crime

14  associate and "Sit in the car.   They know what's up.

15  Something happened if they get out of the car."   So clearly

16  Mr. Garofalo anticipates that there could be violence.

17         And down towards the end of the excerpt Mr. Garofalo

18  twice states "He drives" in reference to another person in the

19  car.   "You clean."   Clean refers to bullets that are in the

20  car and that are being cleaned --

21         THE COURT: These are inferences you're drawing

22  from --

23         MR. TREMONTE: Drawing from the recording, correct,

24  Your Honor.   I apologize.

25         THE COURT: From the recording.   The way I read Ms.

5

1  Graziano's letter -- I hope I'm pronouncing your name

2  correctly.

3          MS. GRAZIANO: Yes, Your Honor.

4          THE COURT: Is not that she takes -- that she

5  acknowledges the truth of the inferences that you seek to draw

6  from the conversation but that she points out that they are

7  somewhat ambiguous conversations.

8          MR. TREMONTE: I don't think they're ambiguous at all

9  and I think they're especially unambiguous even accepting for

10 the purpose of argument the truth of what Ms. Graziano

11 asserts, namely that the defendant is friends with the

12 intended victim.  I think that if you --

13         THE COURT: Well, that's irrelevant.

14         MR. TREMONTE: If you load up the car and you have a

15 gun and you're cleaning the bullets and you go searching for

16 somebody who you're going to threaten the fact that your

17 friends with them is not --

18         THE COURT: Well, that's the inference you're drawing

19 from the language that doesn't really say that.  Right?

20 There's no reference to bullets or guns in any of the words

21 that are recorded -- that are refuted in your letter.  Am I

22 incorrect about that?

23         MR. TREMONTE: Your Honor, I believe that there is a

24 reference to both guns and bullets.

25         THE COURT: Maybe I --

6

1          MR. TREMONTE: At Page -- the top of Page 22.  Well,

2    actually, the bottom of Page 21 --

3          THE COURT: Okay. Got it.

4          MR. TREMONTE:  -- there's reference to it a thing

5    and then prints and then it's made clear that it's a guy.

6    So --

7          THE COURT: It's nothing that Mr. Garofalo -- let's

8    find on how he says.  Garofalo.

9          MS. GRAZIANO: Garofalo.

10         THE COURT: It is Garofalo?

11         MS. GRAZIANO: Yes, Your Honor.

12         THE COURT: Is it A-F-O and it's spelled O-F-A or is

13   it O-F-A but said like A-F-O?

14         MS. GRAZIANO: It's G-A-R-O-F-A-L-O.

15         THE COURT: Okay.  Right.  Right.  There is certainly

16   references to guns and bullets.  I don't think Mr. Garofalo

17   uses those words but you're absolutely right.  Thank you.  Go

18   ahead.

19         MR. TREMONTE: So the point that the Government is

20   making I think that the recording clearly illustrates his --

21   relates to danger.

22         THE COURT: Yes.

23         MR. TREMONTE: And it really -- the relationship

24   between the defendant and the intended victim I think is

25   irrelevant to the existence of the danger.

7

1          THE COURT: Now, obviously he's never been charged

2    with anything in connection with this; correct?

3          MR. TREMONTE: That is correct, Your Honor.

4          THE COURT: And the statute of limitations on it at

5    least as a direct offense and not a predicate act has run.

6          MR. TREMONTE: I believe that is correct, Your Honor.

7          THE COURT: Go ahead.

8          MR. TREMONTE: And with respect to the point made at

9    the bottom of the second page of defense counsel's letter that

10   Mr. Garofalo never talks about -- never has conversations

11   relating to violent acts our supplemental letter I think

12   addresses that point directly.  There are any number of

13   conversations, including the two that are referenced in our

14   letter, where other Columbo crime family associates who have

15   or the evidence would show have very close ties to the

16   Persicos tell the cooperating witness about violent acts that

17   the defendant has engaged in, and that was the point of the

18   supplemental letter.

19          Then the last point, Your Honor.  The suggestion

20   that there's no evidence of meetings between Mr. Garofalo and

21   members of organized crime is belied by many, many consensual

22   recordings.  We could point to any number of them. One in

23   particular I think it makes sense to reference at this

24   juncture is a September 2, 2009 consensual recording where Mr.

25   Garofalo himself states that he had just very recently thrown

8

1  away the phone, the cellular phone that he had been using to

2  communicate with Theodore Persico who at the time was a

3  soldier in the family and now the evidence shows is the

4  underboss of the family, and then there's a brief discussion

5  where Mr. Garofalo says something about Mr. Persico, Jr.'s new

6  boat and makes a joke about how -- that's how you know he's a

7  real skipper.  The pun obviously refers not only to the fact

8  that he's captain of the boat but also to his status in the

9  crime family.

10         So those are the points that the Government wants to

11 address at this time.

12         THE COURT: Thanks very much.

13         MS. GRAZIANO: Your Honor, I'd like to just briefly

14 go through some of the points that my colleague made.

15         Your Honor, I never say that there's not a threat of

16 violence in the indictment.  I do say that there's no actual

17 violence that the Government can point to --

18         THE COURT: I understand the distinction.  Thank you.

19         MS. GRAZIANO:  -- throughout the -- also, I'd like

20 to say that there's another tape that speaks of this Craig

21 Marino incident and it's a tape that was played for Mr.

22 Garofalo by the FBI and it's a tape that clearly Mr. Garofalo

23 on that tape speaking with a Government CW is saying he's a

24 friend of mine, no harm could come to him.  That is a tape

25 that I'm referencing and asking the Government to play.  In

9

1  that tape Mr. Garofalo is overheard saying there can't be any

2  guns, there can't be any violence.

3          I would also --

4          THE COURT: Of course the inference from that is that

5  he knows that the people he's speaking to who he expects to

6  have persuasive power over would be using guns and violence

7  but for his intervention in that particular instance.

8          MS. GRAZIANO: But, again, no violence is given to

9  Mr. Garofalo at that juncture where he's inducing violence or

10  encouraging violence.  He's actually trying to put out a fire

11  that has been started.

12          Your Honor, I think I've put forward to the Court a

13  very complete package, a package that not only has his family

14  members on the line but also a courtroom full of friends.

15          They're posting their properties that are their

16  primary homes.  They're not posting properties that are their

17  second homes in the Hamptons.  They're posting properties that

18  they and their families live in.  You can see by the equity

19  chart that these people would be left in financial ruin.  His

20  family would be left in financial ruin and they're aware of

21  the allegations.  I reviewed the allegations with each of them

22  and they're still standing here today ready to stand up for

23  him.

24          Your Honor, I'm saying to this Court that the

25  Government is asking you to do what they can't do, and that is

10

1    to hold Mr. Garofalo responsible for charges that they haven't

2    indicted him on and if they're going to then we're deal with

3    them at that time.

4            THE COURT: Thanks.  Anything else?

5            MR. TREMONTE: Very briefly.  The larger context of

6    the tape, and I'm confident that we can prove this.  The

7    reason why the violence didn't happen is because the organized

8    crime member that they had to consult about whether or not

9    they could commit an act of violence said no and that, Your

10   Honor, I submit is also clear from the tape and we are of

11   course asking the Court to do something that we can't do but I

12   want to be specific about what it is we're asking.

13           I don't think that the size of the package is really

14   relevant.  We're asking the Court for a finding that the

15   defendant poses a danger to the community so significant that

16   there are no set of conditions that would be sufficient to

17   insure against that.

18           THE COURT: Right.  Got it.

19           MS. GRAZIANO: Your Honor, just one more thing on the

20   danger to the community.  The Government has known the

21   allegations that he's indicted for since 2004 and 2008 and

22   he's been out for the last sixteen months.  If he was that

23   much of a danger to the community why didn't they immediately

24   pick him up?

25           THE COURT: I don't mean to rush anybody but these

1   are not new arguments in the context of cases of this type

2   which unfortunately appear before this Court with some

3   frequency.

4          I understand the cases cited by the prosecution in

5   its memo.  Those are typically cases that involve people who

6   are the top of a hierarchical chain that has been demonstrated

7   to commit a series of violent acts under the direction of that

8   individual. By the Government's own tape rec -- memo of law,

9   it seems that Mr. Garofalo doesn't -- has not achieved such a

10  commanding stature within organized crime because as I

11  understand the Government's of the tape on Page 21 and 22 he's

12  meeting with Persico, Jr. to get Persico, Jr.'s permission to

13  ask Persico, Sr. to hurt somebody else, and that suggests a

14  midlevel rather than leadership role to me.

15         The other thing I see is a man who has reached the

16  age of 43 and has never been convicted or even charged with an

17  act of physical violence which is somewhat unusual in the

18  organized crime cases that don't involve people at the very

19  top of the hierarchy.

20         However, on the other hand, what I have is somebody

21  who has clearly been talking to people who are highly involved

22  at the top levels of organized crime and who stands accused of

23  crimes that involve the threat of violence and who the

24  Government represents, and I take the representation

25  seriously, is the subject of conversation as someone who's

12

1  committed acts of violence by cooperating witnesses.

2          The bail package is very substantial.  Ordinarily

3  when I take a bail package in a typical case, not a typical

4  organized crime case but a typical case, I advise the suretors

5  that they stand to lose these things if the defendant doesn't

6  return to court.  In this case, I would expect these suretors

7  to sign the bond knowing that it would be forfeited and the

8  property would become property of the United States if there

9  is any violation of the bond, including the commission of a

10  crime while the man is on release.

11          Obviously the commission of a crime would include,

12  but not be limited to, discussing, planning, participating or

13  conspiring to commit an act of violence or obstruction or a

14  threat thereof.  So if they're willing to post their property

15  knowing that the bond could be forfeited if he commits any

16  crime at all including that type while he's out on bail and I

17  would put him on electronic monitoring and house arrest at

18  least for the beginning period of bail.  We'll see how long

19  this case is going to take to get to trial and how it unfolds.

20  You can always make an application in the future.  I would

21  entertain that.

22          Do you want some -- a second call so you can explain

23  this to the suretors --

24          MS. GRAZIANO: Your Honor, I've already explained to

25  the suretors --

13

1          THE COURT:  -- or are they prepared to be --

2          MS. GRAZIANO:  -- what the possibilities were and

3   they all still want to move forward.

4          THE COURT: Is there anything else the Government

5   wants me to say before -- wants to say before I make up my

6   mind finally?

7          MR. TREMONTE: Yes, Your Honor.  I'd like to address

8   the issue of the defendant's role in [inaudible].  Our

9   memorandum sets forth what we believe the evidence would prove

10  as to his -- if you will, a title in the family.

11  Nevertheless, there is ample evidence to show that this

12  defendant occupies a position of some authority and influence

13  in the family that's very -- one that's very uncommon for what

14  we typically understand to be the authority and influence

15  associated with -- that goes along with an associate role.

16          In particular, the frequency of conversations with

17  Theodore Persico since childhood all through the time

18  immediately prior to Theodore Persico's incarceration on drug

19  charges and then immediately thereafter -- immediately after

20  his being released from jail and to the present time.

21          I would also point to the excerpt of the January 22,

22  2009 recording that's referenced in our March 12 letter where

23  Patrick Bombino who's had a lifelong association with Theodore

24  Persico, and I believe the evidence would show knows his mind

25  very well, indicates that the Persico family is indebted to

14

1  Mr. Garofalo and holds him in very high regard.

2         Then the evidence that relates to the charged

3  conduct, in particular the threats of violence with respect to

4  John Doe Number 2 it's clear from that I submit, recordings in

5  support of that charge that Mr. Persico consults with Mr.

6  Garofalo and takes his advice very seriously and treats him

7  when it comes to deciding what to do in connection with

8  criminal activity as a peer.  I think that's very, very

9  important for the Court to be apprised of that.

10        THE COURT: Thank you.  I understand what you're

11  saying and it may be that he has a relationship with certain

12  people that is personal and gives him more influence, but I'm

13  not persuaded by clear and convincing evidence that he's at

14  the pinnacle of the hierarchy of people who are committing

15  violent acts on a regular basis at his instruction which I

16  only point out not because that's the only way the Government

17  can establish dangerousness but because it's my understanding

18  that that's the rationale for many of the decisions cited in

19  the Government's memo for detaining people who haven't been

20  charged with or convicted of committing acts of violence

21  personally.  And that's why I think those cases are at least

22  somewhat distinguishable.

23        I'm prepared to go forward but I've seen some other

24  lawyers come into the courtroom.  It's going to take some time

25  to take 21 signatures and if you'd like to clean out some

1  things -- I don't mean to say it that way.  We'd like to

2  handle some things that could be very quick I'll do those

3  first and we'll take a second call.  Go ahead.

4        MR. TREMONTE: Your Honor, the Government requests an

5  opportunity to interview the suretors between now and the

6  second call and we'd like to be able to make any arguments

7  that go to their appropriateness as financially responsible

8  suretors at that time.

9        THE COURT: That's fine.

10        MS. GRAZIANO: Your Honor, we have no problem with

11  that.  We'd also like to request some time notwithstanding Mr.

12  Garofalo's release but to file the actual confessions, and

13  there is one woman who is not present in the courtroom because

14  her grandfather passed away and she had to go to Chicago

15  unexpectedly but she'll present herself --

16        THE COURT: Well, I'm not going to release until the

17  confessions are filed.  That I won't do because I don't want

18  people coming in and changing their minds.

19        MS. GRAZIANO: That's fine, Your Honor.

20        THE COURT: And that will also give the Government

21  ample time to appeal if they think that it's appropriate to do

22  so.

23        MS. GRAZIANO: Okay.  Great.  Thank you, Your Honor.

24        MR. TREMONTE: Thank you, Your Honor.

25        THE COURT: Thank you.  We'll take a second call.

16

1                      [Off the record.]

2  (Second call at 3:06 p.m.)

3          THE CLERK: Second call for Case Number 10-0147,

4  United States v. Edward Garofalo.

5          Counsel, your name for the record.

6          MR. TREMONTE: Michael Tremonte for the United

7  States.  Good afternoon, Your Honor.

8          MS. GRAZIANO: Jean Marie Graziano on --

9          MR. MATTHEWS: Michael Matthews.

10          MS. GRAZIANO:  -- for the defendant, Your Honor.

11          THE COURT: I think that to accommodate the Marshals

12  concern what I'm going to ask is that Mr. Garofalo and his

13  counsel move to the right and I'd like to get all of the

14  suretors over here on my left.  If you're signing the bond,

15  come on up.

16                    [Pause in proceedings.]

17          THE COURT: I want you all to speak up loud and clear

18  because we're recording everything you say.  I want that

19  record to be clear and legible to whoever has to listen to the

20  recording.

21          Go ahead.

22          THE CLERK: Can you raise your right hands?

23  (AT THIS TIME, THE SURETORS, WERE SWORN.)

24          THE CLERK: State your name for the record starting

25  with you.

17

1          MR. PIRVONTE: John Pirvonte.

2          MS. GAROFALO: Alberta Garofalo.

3          MR. REGO: Gregg Rego.

4          MR. LASCALA: Robert Lascala.

5          MR. CASSASONTO:  Steven Cassasonto.

6          MS. SCAVETTI: Vanessa Scavetti.

7          MR. VACERRI: Dominick Vacerri.

8          MR. : Anthony [inaudible].

9          FEMALE VOICE: [inaudible]

10          MR. GAROFALO: Emanuel Garofalo.

11          MS. GAROFALO: [inaudible] Garofalo.

12          MR. SERANO:  Arthur Serano.

13          THE CLERK: Thank you.

14          THE COURT: Now, I'm going to address you in the

15   order that I have you listed here and make sure I have

16   everybody before I'm done.  Some of what I'm going to ask you

17   I'm going to ask you as individuals.  Some of what I'm going

18   to ask you I'm going to tell you as a group.

19          Let me tell you as a group first.  Mr. Garofalo

20   stands before the Court accused of extremely serious crimes.

21   According to the prosecution he's committing those crimes on

22   tape recordings that they have in their possession.  According

23   to the prosecution there are many witnesses who will

24   corroborate the inferences that could be drawn from those tape

25   recordings.

18

1      If Mr. Garofalo is convicted he stands to serve a

2  lengthy prison sentence.  He has asked you to help him secure

3  his release on bail while he awaits further proceedings in his

4  case.  He's asking you to pledge to pay the United States

5  Government $3 million if he violates any condition of his

6  bail.  He's asking you to place a lien on any real estate that

7  you own in favor of the United States Government to secure

8  your promise to pay the $3 million that you would owe if Mr.

9  Garofalo violates the conditions of -- any condition of his

10  bail.

11      Let me say this another way.  If Mr. Garofalo

12  doesn't come back to Court whenever he's supposed to, even if

13  he's later caught, if Mr. Garofalo commits a crime while he's

14  out on bail, even if it's a minor crime, each of you will owe

15  the United States Government $3 million. If you posted

16  property to secure your promise, that property will

17  automatically become the property of the United States

18  Government. You will be thrown out of your home if it's your

19  home or whoever is living there will be thrown out.  The

20  Government will sell the property cheap, pay off the debt and

21  come after you for the balance of the $3 million assuming

22  there's still an amount owed.

23      Are you a suretor signing the bond, sir?

24      MALE VOICE: Yes, sir.

25      THE COURT: Raise your right hand.  Do you swear

19

1   you're about to -- that everything you tell me will be the

2   truth, the whole truth and nothing but the truth?

3                MALE VOICE: Yes, I do.

4                THE COURT: Now I have to start all over again.

5                MALE VOICE: I had to go to the men's room.  I

6   apologize.

7                THE COURT: That's all right.  I'll do it again.

8                MR. TREMONTE: I will note for the Court, Your Honor,

9   that we had a brief discussion outside and I said I thought it

10  would be safe for him to take five minutes.  So I have to

11  share [inaudible].

12               THE COURT: There's no blame.  These things happen.

13  It bears repeating anyway.

14               Mr. Garofalo stands before the Court. He's charged

15  with very serious crimes.  The prosecutor says that he's

16  committed those crimes on tape recordings that they have and

17  that there are many witnesses to the crimes who will testify

18  about them.  If Mr. Garofalo is convicted of any of the

19  charges that are pending against him he can go to prison for a

20  very long time.

21               He's asking whether you want to help him get out on

22  bail while he awaits further proceedings in his case.  He's

23  asking you to sign a $3 million bond on his behalf.  What that

24  means is that if he breaks any of the bail rules you will each

25  owe the United States Government $3 million.

20

1        If you put up property, and this where you came in,

2   if you put up property to secure your promise, that property

3   will automatically become the property of the United States

4   Government and whoever is living in it will be evicted.  The

5   property will be sold cheap.  All the debts will be paid off

6   and then the Government will chase you for the rest of the $3

7   million.

8        In doing so they will obtain a legal judgment

9   against you.  That legal judgment will entitle the United

10  States Government to seize any of the assets that you may

11  have.  That legal judgment will entitle the United States

12  Government to serve your employers with restraining notices so

13  that your pay goes to the Government instead of to you.  That

14  legal judgment will ruin your credit rating.  You will not get

15  a credit card or a car loan or a home loan because anybody who

16  runs your credit report will see that you owe the United

17  States Government $3 million. They won't be inclined to lend

18  you money under that circumstance.

19       This will not only happen if Mr. Garofalo flees even

20  if he's caught.  It will also happen if Mr. Garofalo commits

21  any crime at all while he is out on bail including, but not

22  limited to, threatening a witness, trying to collect money

23  that's owed to somebody in a manner that violates the law, or

24  otherwise committing a crime.

25       Anthony DiMichelle, did you hear and understand

21

1    everything I've said?

2              MR. DiMICHELLE: Yes.

3              THE COURT: Do you, in fact, own property on Main

4    Street in Voorhees, New Jersey?

5              MR. DiMICHELLE: Yes.

6              THE COURT: Approximately what is it worth?

7              MR. DiMICHELLE: 330.

8              THE COURT: Approximately how much do you owe on it?

9              MR. DiMICHELLE: [inaudible].

10             THE COURT: Do you own it in your own name?

11             MR. DiMICHELLE: Yes.

12             THE COURT: Are you employed?

13             MR. DiMICHELLE: Yes.

14             THE COURT: What do you do?

15             MR. DiMICHELLE: I work for an appraisal company.

16             THE COURT: What's the name of it?

17             MR. DiMICHELLE: Rely Appraisals.

18             THE COURT: What's the address of it?

19             MR. DiMICHELLE: 49 Crowne Point Road.

20             THE COURT: What town?

21             MR. DiMICHELLE: [inaudible], New Jersey.

22             THE COURT: How much do you earn there?

23             MR. DiMICHELLE: A thousand a week.

24             THE COURT: Do you still want to sign the bond?

25             MR. DiMICHELLE:  Yes.

22

1          THE COURT: How do you know Mr. Garofalo?

2          MR. DiMICHELLE: My brother-in-law.

3          THE COURT: Arthur Serano, did you hear and

4   understand everything I said?

5          MR. SERANO: Yes.

6          THE COURT: Are you posting property here?

7          MR. SERANO: Yes.

8          THE COURT: I'm looking for you.  I can't find you.

9          Do you own property with your wife Renee on Danbury

10  Lane in Sewell, New Jersey?

11         MR. SERANO: Yes.

12         THE COURT: How much is it worth?

13         MR. SERANO: 330.

14         THE COURT: How do you owe on it?

15         MR. SERANO: 120.

16         THE COURT: Are you employed?

17         MR. SERANO: Yes.

18         THE COURT: What do you do?

19         MR. SERANO: [inaudible]

20         THE COURT: What's the name of it and what's its

21  address?

22         MR. SERANO: [inaudible], 279 [inaudible] Road,

23  [inaudible].

24         THE COURT: How much did you earn from that business

25  last year, approximately?

1          MR. SERANO: $50,000.00, $60,000.00.

2          THE COURT: Do you still want to sign the bond?

3          MR. SERANO: Absolutely.

4          THE COURT: How do you know Mr. Garofalo?

5          MR. SERANO: My brother-in-law.

6          THE COURT: Renee Serano, did you hear and understand

7    everything I've said?

8          MS. SERANO: Yes.

9          THE COURT: Is everything Arthur told me about the

10   property accurate?

11         MS. SERANO: Yes.

12         THE COURT: Do you own it with him?

13         MS. SERANO: Yes.

14         THE COURT: Are you working?

15         MS. SERANO: No.

16         THE COURT: How do you know Garofalo?

17         MS. SERANO: He's my brother-in-law.

18         THE COURT: Do you still want to sign the bond?

19         MS. SERANO: Yes.

20         THE COURT: Dwayne Dicarini?

21         MR. LUCARINI:  Lucarini.

22         THE COURT: Lucarini, excuse me.  Did you hear and

23   understand everything I've said?

24         MR. LUCARINI: Yes, sir.

25         THE COURT: Are you working?

24

1          MR. LUCARINI: Yes, sir.

2          THE COURT: What do you do?

3          MR. LUCARINI: A hair salon.

4          THE COURT: What's the name of it?

5          MR. LUCARINI: [inaudible]

6          THE COURT: Where is it located?

7          MR. LUCARINI: Cherry Hill, New Jersey, [inaudible].

8          THE COURT: How much money did you earn from that

9 business last year?

10         MR. LUCARINI: $20,000.00.

11         THE COURT: Do you, in fact, own property on Dominion

12 Drive in Marlton, New Jersey?

13         MR. LUCARINI: Yes, Your Honor.

14         THE COURT: What's it worth?

15         MR. LUCARINI: $400,000.00.

16         THE COURT: What do you owe on it?

17         MR. LUCARINI: Nothing.

18         THE COURT: Do you still wish to sign the bond?

19         MR. LUCARINI: Yes, sir.

20         THE COURT: How do you know Mr. Garofalo?

21         MR. LUCARINI: I was friends with him for the last

22 fifteen years.

23         THE COURT:  Roselle Lucarini.

24         MS. GRAZIANO:  Your Honor --

25         THE COURT:  Not here, correct?  Thank you.  I just

25

1  realized her signature line was blank but thank you for

2  keeping me focused.  I have a lot of names here.

3          Barbara Garofalo and I guess you must be Manny

4  Garofalo; right?  I'm getting better at this as I go forward.

5          MR. TREMONTE: You're doing good, Your Honor.

6          THE COURT: Thanks for the vote of confidence.

7          Ms. Garofalo, did you hear and understand everything

8  I've said?

9          MS. B. GAROFALO: Yes.

10         THE COURT: Do you, in fact, own property on Atlantic

11 Avenue in Brooklyn, New York with Manny?

12         MS. B. GAROFALO: My husband [inaudible]

13         THE COURT: Is it in -- this indicates at least that

14 it's in both your names but certainly between the two of you

15 that accounts for all of the owners.  Would that be correct?

16         MS. B. GAROFALO: Yes.

17         THE COURT: Would your husband be more familiar with

18 its value than you then?

19         MR. M. GAROFALO: Not really.

20         THE COURT: How much is it worth?

21         MS. B. GAROFALO: It's worth $800,000.00.

22         THE COURT: What do you owe on it?

23         MS. B. GAROFALO: 480.

24         THE COURT: Are you working?

25         MS. B. GAROFALO: No.

1          THE COURT: How do you know Mr. Garofalo?

2          MS. B. GAROFALO: My nephew.

3          THE COURT: Are you prepared to sign the bond?

4          MS. B. GAROFALO: Yes.

5          THE COURT: Manny Garofalo, did you understand

6    everything I've said?

7          MR. M. GAROFALO: Yes, I do, Your Honor.

8          THE COURT: Did Barbara Garofalo accurately describe

9    your ownership interest and equity in the property?

10          MR. M. GAROFALO: Yes, she did, Your Honor.

11          THE COURT: Are you working?

12          MR. M. GAROFALO: Yes, I am, Your Honor.

13          THE COURT: What do you do?

14          MR. M. GAROFALO: I'm a consultant.

15          THE COURT: For what?  What's the name and address of

16    your company?

17          MR. M. GAROFALO: It's called Cayenne Corp.  It

18    resides at the same address as on the bond and I broker

19    construction worker to the construction industry.

20          THE COURT: How much did you earn from that business

21    last year?

22          MR. M. GAROFALO: $350,000.00.

23          THE COURT: Are you still prepared to sign the bond?

24          MR. M. GAROFALO: Yes, I am.

25          THE COURT: How are you connected to Mr. Garofalo?

27

1          MR. M. GAROFALO: My nephew.

2          THE COURT: Is Robert Lascala here?

3          MR. LASCALA: Yes.

4          THE COURT: Did you hear and understand everything

5    I've said?

6          MR. LASCALA: Yes.

7          THE COURT: Do you, in fact own property on Route 70E

8    in Cherry Hill, New Jersey and on Heartstone in -- is it

9    Carlton, New Jersey?

10          MR. LASCALA: Carlton, yes.

11          THE COURT: What are those properties worth?

12          MR. LASCALA: The one [inaudible] million and the

13    other one -- I'm not sure exactly.  350.

14          THE COURT: How much do you owe on them?

15          MR. LASCALA: One 550 and the other one a hundred and

16    something, 175 maybe.

17          THE COURT: Are you working?

18          MR. LASCALA: Yes.

19          THE COURT: What do you do?

20          MR. LASCALA: I own a restaurant.

21          THE COURT: What's the name of it?

22          MR. LASCALA: Lascala's.

23          THE COURT: That makes it easy.  Where is it located?

24          MR. LASCALA: [inaudible]

25          THE COURT: How much did you earn from that business

1    last year?

2              MR. LASCALA: About $250,000.00.

3              THE COURT: How are you connected to Mr. Garofalo?

4              MR. LASCALA: A friend of mine.

5              THE COURT: Are you still prepared to sign this bond?

6              MR. LASCALA: Yes, I am.

7              THE COURT: I'm going to blow this name.  I'm sorry.

8    Angie Vacherri.  Is that you?

9              MS. VACERRI:  Vacerri, yes.

10             THE COURT: Vacerri.  Now I have to find you.  Do

11   you, in fact, own property on Cutsload Road in Somerville, New

12   Jersey?

13             MS. VACERRI: Yes.

14             THE COURT: What is it worth?

15             MS. VACERRI: About 280.

16             THE COURT: How much do you owe on it?

17             MS. VACERRI: About 30.

18             THE COURT: Are you working?

19             MS. VACERRI: No.

20             THE COURT: Are you still prepared the sign the bond?

21             MS. VACERRI: Yes.

22             THE COURT: How do you know Mr. Garofalo?

23             MS. VACERRI: He's my nephew.

24             THE COURT: Is Dominick Vacerri here?

25             MR. VACERRI: Yes, I am, Your Honor.

29

1          THE COURT: Did you understand everything I've said?

2          MR. VACERRI: Yes.

3          THE COURT: Do you co-own the property on Cutsload

4     Road with Angie?

5          MR. VACERRI: Yes, I do.

6          THE COURT: Did she accurately describe its value and

7     the debt on it?

8          MR. VACERRI: Yes.

9          THE COURT: Are you working?

10         MR. VACERRI: Yes.

11         THE COURT: What do you do?

12         MR. VACERRI: I work for a [inaudible] union in

13    Philadelphia.

14         THE COURT: How much did you earn last year?

15         MR. VACERRI: [inaudible]

16         THE COURT: Do you have a specific employment

17    address?

18         MR. VACERRI: I'm not sure where it is, Your Honor.

19         THE COURT: So, in other words, you get hired job by

20    job as a union member?

21         MR. VACERRI: That's correct.

22         THE COURT: What's the local name?

23         MR. VACERRI: Local 8 in Philadelphia [inaudible]

24    union.

25         THE COURT: How are you connected to Mr. Garofalo?

30

1          MR. VACERRI: He's my nephew.

2          THE COURT: Are you still prepared to sign the bond?

3          MR. VACERRI: Yes.

4          THE COURT: Where is Vanessa Scavetti?

5          MS. SCAVETTI: Here.

6          THE COURT: Did you understand everything I've said?

7          MS. SCAVETTI: Yes.

8          THE COURT: Do you own property on Sea Shore Road in

9     Brigham Teen, New Jersey?

10          MS. SCAVETTI: Yes, Your Honor.

11          THE COURT: What it's worth?

12          MS. SCAVETTI: $250,000.00.

13          THE COURT: What do you owe on it?

14          MS. SCAVETTI: 175.

15          THE COURT: Are you working?

16          MS. SCAVETTI: No.

17          THE COURT: How do you know Mr. Garofalo?

18          MS. SCAVETTI: [inaudible]

19          THE COURT: Do you still wish to sign the bond?

20          MS. SCAVETTI: Yes, Your Honor.

21          THE COURT: Is John Fiavonte here?

22          MR. FIAVONTE: Yes, Your Honor.

23          THE COURT: I didn't hear but that's okay.

24          Do you own property on Maple Glenn Road in Mount

25     Laurel, New Jersey?

31

1          MR. FIAVONTE: Yes.

2          THE COURT: What's it worth?

3          MR. FIAVONTE: About 650.

4          THE COURT: What do you owe on it?

5          MR. FIAVONTE: About 430.

6          THE COURT: Are you working?

7          MR. FIAVONTE: Yes.

8          THE COURT: What do you do?

9          MR. FIAVONTE: I'm a plant operation director for

10   Voorhees pediatrics facility.

11          THE COURT: Where is that located?

12          MR. FIAVONTE: Voorhees, New Jersey.

13          THE COURT: How much do you earn there?

14          MR. FIAVONTE: $75,000.00.

15          THE COURT: Are you still prepared to sign the bond?

16          MR. FIAVONTE: Yes.

17          THE COURT: How do you know Mr. Garofalo?

18          MR. FIAVONTE: He's a friend.

19          THE COURT: Heather Fiavonte is not here; correct?

20          MS. GRAZIANO: No, she's not, Your Honor.

21          THE COURT: Is Steven Cassasonto here?

22          MR. CASSASONTO: Yes.

23          THE COURT: Do you own property on Seigel Street in

24   Philadelphia?

25          MR. CASSASONTO: Yes, I do.

32

1        THE COURT: Do you own it in your own name?

2        MR. CASSASONTO: No.  It's in my name and my

3   mother's.

4        THE COURT: Is the mother --

5        MS. GRAZIANO: Her name is Joanna and she's not

6   present today.

7        THE COURT: But she will be signing the bond?

8        MS. GRAZIANO: Yes.

9        THE COURT: Mr. Cassasonto, what's the property

10  worth?

11       MR. CASSASONTO: About $200,000.00.

12       THE COURT: How much is owed on it?

13       MR. CASSASONTO: Nothing.

14       THE COURT: Are you working?

15       MR. CASSASONTO: Yes.

16       THE COURT: What do you do?

17       MR. CASSASONTO: I have a pizza business.

18       THE COURT:  What's the name of it?

19       MR. CASSASONTO: Boston Style.

20       THE COURT: What's the address of it?

21       MR. CASSASONTO: It's Montgomery and [inaudible] Road

22  [inaudible].

23       THE COURT: How much money did you earn from that

24  business last year?

25       MR. CASSASONTO: About fifty thou.

33

1       THE COURT: Are you still willing to sign the bond?

2       MR. CASSASONTO: Yes.

3       THE COURT: How do you know Mr. Garofalo?

4       MR. CASSASONTO: Friend.

5       THE COURT: Is Gregg Rego here?

6       MR. REGO: Yes, sir.

7       THE COURT: Do you own property on Kimball Street in

8  Philadelphia?

9       MR. REGO: I do.

10       THE COURT: Do you own it in your own name?

11       MR. REGO: Yes.

12       THE COURT: How much is it worth?

13       MR. REGO: About $325,000.00.

14       THE COURT: How much do you owe on it?

15       MR. REGO: About $250,000.00.

16       THE COURT: Are you working?

17       MR. REGO: Yes.

18       THE COURT: What do you do?

19       MR. REGO: I own a title insurance company.

20       THE COURT:  What's the name of it?

21       MR. REGO: HA Land Transfers.

22       THE COURT: What its address?

23       MR. REGO: It is 5001 Route 42, Suite A, in

24  Tannersville, New Jersey 08016.

25       THE COURT: How do you know Mr. Garofalo?

34

1          MR. REGO: Friend.

2          THE COURT: Do you still want to sign the bond?

3          MR. REGO: I do.

4          THE COURT: How much money did you make from that

5    business last year?

6          MR. REGO: $89,000.00.

7          THE COURT: Is Janelle Diacco here?

8          MS. DIACCO: Yes.

9          THE COURT: Did you hear and understand everything

10   I've said?

11         MS. DIACCO: Yes.

12         THE COURT: Do you own property on Crowne Point Road

13   in [inaudible], New Jersey?

14         MS. DIACCO: Yes.

15         THE COURT: Do you own it in your own name?

16         MS. DIACCO: Yes.

17         THE COURT: How much is it worth?

18         MS. DIACCO: About 525.

19         THE COURT:  About how much do you owe on it?

20         MS. DIACCO: A little over 300.

21         THE COURT: Are you working?

22         MS. DIACCO: Yes.

23         THE COURT: What do you do?

24         MS. DIACCO: I have a real estate appraisal company

25   [inaudible].

35

| | |
|---|---|
| 1 | THE COURT: What are they called? |
| 2 | MS. DIACCO: [inaudible] Appraisal [inaudible] |
| 3 | THE COURT: What's their address? |
| 4 | MS. DIACCO: [inaudible] Road [inaudible] |
| 5 | THE COURT: How much did you earn from those |
| 6 | businesses last year? |
| 7 | MS. DIACCO: About $85,000.00. |
| 8 | THE COURT: Do you still wish to sign the bond? |
| 9 | MS. DIACCO: Yes. |
| 10 | THE COURT: How are you connected to Mr. Garofalo? |
| 11 | MS. DIACCO: Friend [inaudible]. |
| 12 | THE COURT: I don't know who Evan [inaudible] are. |
| 13 | MS. GRAZIANO: [inaudible] |
| 14 | THE COURT: Where is Alberto Garofalo? |
| 15 | MS. A. GAROFALO:  Alberta. |
| 16 | THE COURT: Alberta Garofalo, got it. |
| 17 | Is there property associated with Alberta? |
| 18 | MS. GRAZIANO: No, there is not. |
| 19 | THE COURT: Okay.  Then I will find it no matter how |
| 20 | much I look for it, will I? |
| 21 | Ms. Garofalo, how are you connected to the |
| 22 | defendant? |
| 23 | MS. A. GAROFALO: I'm his mother. |
| 24 | THE COURT: Are you working? |
| 25 | MS. A. GAROFALO: Yes. |

36

1          THE COURT: What do you do?

2          MS. A. GAROFALO: I work for the Board of Education.

3          THE COURT: What do you do --

4          MS. A. GAROFALO: Paraprofessional.

5          THE COURT: How much did you earn last year?

6          MS. A. GAROFALO: 34.

7          THE COURT: That's the Board of Education for the

8    City of New York?

9          MS. A. GAROFALO: Yes.

10          THE COURT: Are you prepared to sign the bond?

11          MS. A. GAROFALO: Yes.

12          THE COURT: Have I overlooked anybody?

13          MS. GRAZIANO: No, Your Honor.

14          THE COURT: Have you all already signed the

15   documents?  Do any of you have any questions?

16   (All state no.)

17          THE COURT: We said that we wouldn't be releasing the

18   defendant until the confessions of judgment are filed.  Is

19   there a date by which, Counsel, you think you can commit to

20   doing that?

21          MS. GRAZIANO: Your Honor, on the safe side we're

22   going to say Wednesday but we believe we'll have it done by

23   Monday afternoon but [inaudible].

24          THE COURT: If you get it done by Monday and it's

25   early enough in the afternoon we can probably have Mr.

1  Garofalo produced on Tuesday but otherwise I'm going to issue

2  a temporary order of detention returnable Wednesday.

3         MS. GRAZIANO: Your Honor, we'll ask that it be done

4  on Tuesday and I'll [inaudible].

5         THE COURT: Then it will be done on Tuesday and

6  obviously you'll have to get them over to the U.S. Attorney's

7  Office and they'll have a chance to look at them before he's

8  released.  So if -- don't come in at 4:00 on a Tuesday

9  afternoon with a stack of confessions.  Okay?

10        So that will be -- today is the 12th. Sunday is the

11 14th. Tuesday is the 16th.

12        You can wait for me. I'm going to get to you.

13        Tuesday. If it's not perfected he'll go back and

14 they'll wake him up again on Wednesday.  He'll miss breakfast

15 two days in a row.

16        Is there anything else I can accomplish while we

17 have everybody together?

18        MR. TREMONTE: Your Honor, should we specify the

19 conditions on the bond now or --

20        THE COURT: Yes.  I'll state them now.

21        MR. TREMONTE: The only other thing I would note is

22 in the event that things get done very quickly and there's

23 some possibility [inaudible] please let me know as early as

24 possible because I need to [inaudible] defendant.

25        THE COURT: The conditions of the bond -- well, right

38

1  now there are no travel restrictions.  Should I say Eastern

2  and Southern even though there's home detention?  Is there any

3  objection to that?

4           MS. GRAZIANO: [Inaudible] New Jersey.

5           THE COURT: New Jersey, Eastern, Southern.  No

6  contact with co-defendants except in the presence of counsel.

7           MS. GRAZIANO: Except, Your Honor, the exception of

8  his wife who's also a co-defendant.

9           THE COURT: I didn't realize the wife was named in

10  the indictment.

11           Then it says witnesses, victims and members of

12  organized crime. The Government is either going to have to

13  specify who those people are or it's going to have to bear the

14  burden of proving not only that there was contact but that the

15  defendant knew that the person was somebody who was not

16  allowed to have contact with by virtue of this order.  I think

17  that's obvious.

18           MR. TREMONTE: I'm confident that in the event

19  there's contact we'll be able in a position prove [inaudible].

20           THE COURT: The defendant may not have a passport

21  while he's on pretrial release.  Does he have one?

22           MS. GRAZIANO: I'll surrender it, Your Honor.

23           THE COURT: Let's surrender -- make sure it's

24  surrendered before he's released and he may not apply for or

25  have in his control a passport with his likeness or his name

1   while he's on bail.

2          You will be subject to random home visits by a

3   Pretrial Services officer. He will report to Pretrial as

4   directed.  He will be subject to home detention with

5   electronic monitoring for which he will pay, and he may not

6   leave his home except for medical emergencies, court

7   appearances and attorney visits.  I'm prepared to have that

8   revisited after a period of adjustment that's successful.

9          He must undergo evaluation and treatment of mental

10  health problems. Is there some history that's going on for us

11  to require that?

12         MS. GRAZIANO:  Your Honor, he had a previous case

13  where he was in gamble therapy.

14         THE COURT: That's probably what triggered Pretrial's

15  request for that.  Thank you.

16         He'll pay for the electronic monitoring.  I've made

17  it explicit on the bond since it was signed that -- which I've

18  already told you that any violation including commission of a

19  crime would result in forfeiture of the bond as to the

20  defendant and the suretors.

21         Of course the dollar mount of $3 million and the

22  list of properties is already here.

23         MS. GRAZIANO: Your Honor, as I indicated in my

24  submission morning, he had a scheduled surgery on Thursday

25  morning.  Can we just note for the record that he can attend

40

1  that?

2          THE COURT: Yes. I will consider his surgery on

3  Thursday morning to be a medical emergency but I want the

4  Pretrial Services officer assigned to his case to know where

5  and when that surgery will be taking place, whether it's a day

6  op or whether he's being admitted, and I want him to waive his

7  medical records privilege with respect to Pretrial Services.

8          I don't want the defendant to sign until -- because

9  I want him warned right before he's released.

10         MS. GRAZIANO: Okay.

11         THE COURT: But I'll tell you now, you step over the

12 line one inch all those homes become property of the United

13 States Government. All these people owe the United States

14 Government $3 million and so do you.  Then you've got bail

15 jumping on top of everything else which is a mandatory prison

16 sentence served consecutively to whatever time you get on

17 anything else you might be convicted of.  Understood?

18         THE DEFENDANT: Understood.  I'll be cooking for them

19 every Sunday it looks like.

20                    *  *  *  *  *

21

22

23

24

25

41

1       I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5       _____

6                           Shari Riemer

7   Dated:   March 15, 2010

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25