JB:AB/MT
F. #2009R00195

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                Cr. No. 10-147 (SLT)

JAMES BOMBINO,
ALICIA DIMICHELE,
    also known as "Alicia
    Garofalo,"
EDWARD GAROFALO, JR.,
MIKE LNU,
MICHAEL PERSICO,
THEODORE PERSICO, JR.,
THOMAS PETRIZZO,
LOUIS ROMEO,
      Defendants.

- - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN SUPPORT OF THE
<u>GOVERNMENT'S MOTION FOR PERMANENT ORDERS OF DETENTION</u>

                                       BENTON J. CAMPBELL
                                       United States Attorney
                                       Eastern District of New York
                                       271 Cadman Plaza East
                                       Brooklyn, New York 11201

AMY BUSA
MICHAEL TREMONTE
DUNCAN LEVIN
Assistant United States Attorneys
    (Of Counsel)

## Table of Contents

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . 1

I.   Indictment and Investigation . . . . . . . . . . . . . 2

     A.   Indictment. . . . . . . . . . . . . . . . . . . 2

     B.   Investigation . . . . . . . . . . . . . . . . . 4

II.  Legal Standard . . . . . . . . . . . . . . . . . . . 5

     A.   The Bail Reform Act . . . . . . . . . . . . . . 5

     B.   Organized Crime Defendants . . . . . . . . . . 6

          1.   Organized Crime Leaders Are Dangers to the
               Community . . . . . . . . . . . . . . . . 7

          2.   Organized Crime Defendants Are Likely to Commit
               Crimes if Released on Bail . . . . . . . . 11

          3.   Elaborate Bail Packages Are Insufficient to
               Protect the Community Against Violent Organized
               Crime Defendants . . . . . . . . . . . . 13

III. Government's Motion for Detention . . . . . . . . . . 15

     A.   THEODORE PERSICO, JR. . . . . . . . . . . . . . 16

          1.   Proffered Facts . . . . . . . . . . . . . 17

               a.   Persico, Jr. is a Member of the Colombo
                    Family's Administration . . . . . . . 17

               b.   Persico, Jr. Constitutes a Danger to the
                    Community and Should Be Detained. . . . . 19

                    1.   Nature and Circumstances of the Crimes
                         Charged . . . . . . . . . . . . . 19

                    2.   History and Characteristics of the
                         Defendant . . . . . . . . . . . . 20

                    3.   Seriousness of Danger Posed by the
                         Defendant's Release . . . . . . . 23

                    4.   Evidence of the Defendant's Guilt . 23

i

          c.    Persico, Jr. Should Be Detained Due to His
Willingness to Violate the Conditions of
Supervised Release and Obstruct Justice   24

B.    EDWARD GAROFALO, JR. . . . . . . . . . . . . . . . . 25

      1.    Proffered Facts . . . . . . . . . . . . . . 26

          a.    Nature and Circumstances of the Crimes
Charged . . . . . . . . . . . . . . . . 26

          b.    History and Characteristics of the
Defendant . . . . . . . . . . . . . . . 27

          c.    Seriousness of Danger Posed by the
Defendant's Release . . . . . . . . . . 28

          d.    Evidence of the Defendant's Guilt . . . 28

C.    MICHAEL PERSICO . . . . . . . . . . . . . . . . . 29

      1.    History and Characteristics of the Defendant and
Nature of the Crimes Charged . . . . . . . . 29

      2.    Seriousness of Danger Posed by the Defendant's
Release . . . . . . . . . . . . . . . . . . 33

      3.    Evidence of the Defendant's Guilt . . . . . . 33

D.    JAMES BOMBINO . . . . . . . . . . . . . . . . . . 33

      1.    Nature and Circumstances of the Crimes Charged 34

      2.    History and Characteristics of the Defendant . 34

      3.    Seriousness of Danger Posed by the
Defendant's Release . . . . . . . . . . . . 35

      4.    Evidence of the Defendant's Guilt . . . . . . 35

E.    THOMAS PETRIZZO . . . . . . . . . . . . . . . . . 36

      1.    History and Characteristics of the Defendant . 36

      2.    Nature of the Crime Charged . . . . . . . . . 37

      3.    Seriousness of Danger Posed by the
Defendant's Release . . . . . . . . . . . . 40

      4.   Evidence of the Defendant's Guilt  . . . . . .  40

IV.  Conclusion . . . . . . . . . . . . . . . . . . . .  41

## PRELIMINARY STATEMENT

The government hereby moves for a permanent order of detention with respect to the following defendants: Theodore Persico, Jr., Edward Garofalo, Jr., Michael Persico, James Bombino and Thomas Petrizzo.[1]

Each of these defendants is a member or associate of the Colombo organized crime family of La Cosa Nostra (the "Colombo family") – a violent criminal enterprise responsible for multiple murders. Persico, Jr. is a "made" member of the Colombo family and currently holds a leadership position in the administration of that family. Petrizzo is a soldier in the Colombo family. Michael Persico is a well regarded Colombo family associate, who is the son of the official boss of the Colombo family, the brother of the former acting boss of the Colombo family, and the cousin of Persico, Jr. Garofalo and Bombino are associates who report to Persico, Jr.

As further described below, each of these defendants poses a danger to the community and thus should be detained pending trial.

---

[1]     The government makes this submission without prejudice in seeking detention of the remaining defendants.

1

## I.    Indictment & Investigation

Brief overviews of the charges set forth in the indictment and the underlying investigation are detailed below.

### A.    <u>Indictment</u>

On March 3, 2010, a grand jury sitting in the Eastern District of New York returned an eight count indictment charging various crimes against eight defendants, many of whom are either members or associates of the Colombo family.  Defendants James Bombino, Edward Garofalo, Jr., Michael Persico and Theodore Persico, Jr. are charged with racketeering conspiracy that includes predicate acts of extortion, embezzlement, bribery and fraud.

Listed in the chart below is a summary of the criminal counts included in this indictment:

| Counts | Description | Defendants |
|--------|-------------|------------|
| 1 | Racketeering Conspiracy | Bombino, Garofalo, Persico, Persico, Jr. |
| 2 | Conspiracy to Embezzle from Employee Benefit Plans | Dimichele, Garofalo |
| 3 | Embezzlement from Employee Benefit Plans | Dimichele, Garofalo |
| 4 | Wire Fraud Conspiracy (Testa Corporation) | Bombino, Mike LNU, Persico, Persico, Jr., Petrizzo, Romeo |
| 5 | Extortion Conspiracy (Furniture Store Owner) | Bombino, Persico |
| 6 | Extortion (Furniture Store Owner) | Bombino, Persico |
| 7 | Extortion Conspiracy (Testa Corporation) | Bombino, Persico |
| 8 | Extortion (Testa Corporation) | Bombino, Persico |

Listed in the chart below is a summary of the racketeering acts charged as part of the racketeering conspiracy count:

| R.A. # | Description | Defendant(s) |
|--------|-------------|--------------|
| 1 | Embezzlement from Employee Benefit Funds | Garofalo |
| 2 | Attempted Extortion (John Doe #1) | Garofalo |
| 3 | Conspiracy/Attempted Extortion (John Doe #2) | Garofalo, Persico, Persico, Jr. |
| 4 | Wire Fraud and Commercial Bribery (Testa Corporation) | Bombino, Persico, Persico, Jr. |
| 5 | Extortion Conspiracy/Attempted Extortion (Furniture Store Owner) | Bombino, Persico |
| 6 | Extortion Conspiracy/ Attempted Extortion (Testa Corporation) | Bombino, Persico |

3

B.    **Investigation**

The indictment is the product of a multi-year investigation in which the FBI used a cooperating witness to infiltrate the Colombo family and make hundreds of consensual recordings.  The indictment follows several recent indictments and convictions of numerous members of the highest echelons of the crime family, including the 2007 conviction of former Colombo acting boss Alphonse Persico, Jr. and former Colombo administration member John DeRoss on murder in-aid-of racketeering and witness tampering charges, the 2008 conviction of Colombo captain Joseph Baudanza and others on stock fraud charges, and the 2009 indictment of former Colombo street boss Thomas Gioeli and other Colombo captains, soldiers, and associates on numerous racketeering-related murder charges and other crimes of violence..

Several members and associates of organized crime have agreed to cooperate with the government.  These witnesses each are expected to testify that the Colombo family exists, that all inducted into the Colombo family have sworn oaths of loyalty to commit acts of violence whenever called upon to do so for the sake of their shared criminal enterprise.

Theodore Persico, Jr., as a member of the administration, is responsible for managing the criminal affairs of the enterprise and reaping the lion's share of its illicit

4

proceeds.

These facts – including the positions of Persico, Jr., Garofalo, Persico, Bombino and Petrizzo – will be established at trial through the testimony of cooperating witnesses, consensual recordings, court-authorized wiretaps and surveillance evidence.

## II.  Legal Standard

### A.  The Bail Reform Act

Under the Bail Reform Act, Title 18, United States Code, Sections 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  See 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community").  A finding of dangerousness must be supported by clear and convincing evidence.  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g).

5

**B.   Organized Crime Defendants**

District courts in this Circuit routinely have faced the issue of pretrial detention of organized crime defendants charged with racketeering-related offenses.  See, e.g., United States v. Cirillo, Cr. No. 05-212 (SLT), slip op. (E.D.N.Y. 2005)(Genovese family acting bosses Dominick Cirillo and Lawrence Dentico, as well as Genovese family captain Anthony Antico, detained as dangers to the community), aff'd, 149 Fed. Appx. 40 (2d Cir. 2005); United States v. Gotti, 219 F. Supp. 2d 296, 299-300 (E.D.N.Y. 2002)(Gambino family acting boss Peter Gotti detained as danger to the community), aff'd, United States v. Ciccone, 312 F.3d 535, 543 (2d Cir. 2002); United States v. DeFede, 7 F. Supp. 2d 390, 395 (S.D.N.Y. 1998)(Luchese family acting boss Joseph DeFede detained as danger to the community); United States v. Agnello, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000)(Gambino family captain Carmine Agnello detained as danger to the community);  United States v. Salerno, 631 F. Supp. 1364, 1375 (S.D.N.Y. 1986) (Genovese acting boss and captain detained as danger to the community).

Together, these cases stand at least for the following propositions: (1) leaders of a violent organized criminal enterprise inherently are dangerous due to their position of authority in that enterprise; (2) organized crime defendants often constitute dangers to the community due to the high

likelihood that they will continue to commit crimes if released
on bail; and (3) elaborate bail packages involving home detention
and electronic monitoring are insufficient safeguards to protect
the community against dangerous organized crime defendants.

### 1. Organized Crime Leaders Are Dangers to the Community

Pretrial detention is warranted where defendants,
charged with violent crimes, are leaders or high-ranking members
of a criminal organization whose activities routinely include
violence and threats of violence.  See United States v. Santora,
07-1103-Cr, 225 Fed. Appx. 21, 22, 2007 WL 1533839, at *1 (2d
Cir. 2007)(affirming detention of acting underboss of the Bonanno
family; "The district court found that Santora was a danger to
his community because he was an acting underboss in the Bonanno
crime family and he had committed a crime violence, specifically
conspiracy to commit extortion.  These findings are more than
adequate to support a finding that 'no condition or combination
of conditions will reasonably assure' the safety of the
community."); Ciccone, 312 F.3d at 543; United States v. Colombo,
777 F.2d 96, 99-100 (2d Cir. 1985); United States v. Bellomo, 944
F. Supp. 1160, 1166 (S.D.N.Y. 1996).  Courts in the Second
Circuit have recognized that when organized crime depends on a
pattern of violent conduct of the sort charged in this case, the
risk to the community is substantial and justifies detention.

For example, in United States v. Salerno, 631 F. Supp.

1364, 1375 (S.D.N.Y. 1986), order vacated, 794 F.2d 64 (2d Cir.),

order reinstated, 829 F.2d 345 (2d Cir. 1987), in ordering the

detention of two leaders of the Genovese family, the district

court observed that:

> The activities of a criminal organization
> such as the Genovese Family do not cease with
> the arrest of its principals and their
> release on even the most stringent of bail
> conditions.  The illegal businesses, in place
> for many years, require constant attention
> and protection, or they will fail.  Under
> these circumstances, this court recognizes a
> strong incentive on the part of its
> leadership to continue business as usual.
> When business as usual involves threats,
> beatings, and murder, the present danger such
> people pose in the community is self evident.

Salerno, 631 F. Supp. at 1375.

Similarly, in Defede, 7 F. Supp. 2d at 391, the

defendant, Joseph Defede, was charged with extortion and

extortion conspiracy.  The district court ordered Defede's

pretrial detention, finding that the government had shown by

clear and convincing evidence that Defede was the acting boss of

the Luchese family, thus rendering him a danger to public safety:

> The acting boss of the Luchese family
> supervises all of its far-flung criminal
> activities, including acts of violence.
> Defede's continued liberty therefore presents
> a substantial danger to the public.

Id. at 395.

Recently, Magistrate Judge Robert M. Levy denied bail

to the acting boss of the Genovese family who "participated at

the highest levels in directing an organization alleged in the indictment to be committed to acts of violence to perpetuate its activities and insulate itself from detection by law enforcement," Cirillo, slip. op. at 7, as well as a former acting boss who "is at the highest levels of the Genovese family, participating in highly secret induction ceremonies and sit-downs, and representing the family in important meetings," id. at 11.  The Second Circuit affirmed Judge Levy's decision by summary order.  See 149 Fed. Appx. 40 (2d Cir. 2005)("This court has affirmed the detention of the leaders of organized crime enterprises on the ground that their continued liberty presents a risk to the public not only form their own violent activities but from those of subordinates whom they supervise.").

In addition, to be detained as a danger to the community, an organized crime defendant need not be charged in specific predicate acts of violence; it is enough that his position is at the helm of a violent organization.  Ciccone, 312 F.3d at 542-43; see also United States v. Ferranti, 66 F.3d 540, 543 (2d Cir. 1995)(noting that the defendant need not have committed the violence himself, he can be deemed dangerous if he directed others to commit acts of violence)(citing Colombo, 777 F.2d at 98).  As one court has observed, an organized crime leader "is dangerous because inherent in the leadership position is the supervision of criminal activity that cannot be curtailed

9

by any condition or combination of conditions of release."
<u>Gotti</u>, 219 F. Supp. 2d at 299-300 (citations omitted).

To be sure, courts' decisions to deny bail to organized crime leaders have not been based solely on the defendants' mere "association" with organized crime, but rather on the evidence that members of organized crime, and in particular, high-ranking members of organized crime, routinely engage in acts of violence as a result of their position in a criminal enterprise.  As the court held in <u>Defede</u>, 7 F. Supp. 2d at 392:

> it is well established that persons who hold Defede's status routinely engage in conduct that is a menace to public safety.  The argument thus is based not on the status, but on the inference that a person in Defede's position is quite likely to engage in dangerous conduct – just as one reasonably could infer that one holding the position of major league baseball pitcher is entirely likely to hurl a small white object in the direction of home plate.

Moreover, in enacting the Bail Reform Act, Congress itself recognized that high-ranking members of an organized crime family fall within the "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community."  S. Rep. No. 225 98th Cong., 1st Sess. at 6-7, <u>as reprinted in</u> 1984 U.S. Code Cong. & Admin. News 3182 ("Senate Report"), 3188-89.

Nor is the above caselaw narrowly limited to organized crime "bosses" or "acting bosses."  In <u>United States v. Salerno</u>, 631 F. Supp. at 1374-75, the court held that a defendant would be a danger to the community if released on bail based on evidence that he was a captain in an organized crime family who managed the enforcement operations of the enterprise.  In <u>Colombo</u>, 777 F.2d at 99, a captain of a crew in the Colombo family was ordered detained because the operation of that organization posed a "risk to the public" and a "danger to the community" by its "consistent pattern of orchestrating a series of violent criminal operations."

### 2. Organized Crime Defendants Are Likely to Commit Crimes if Released on Bail

Organized crime defendants pose a particular threat to the community due to the continuing nature of the charged enterprise and its violent criminal activities.  At bottom, because organized crime defendants are career criminals who belong to an illegal enterprise, they pose a distinct threat to commit additional crimes if released on bail.  <u>See</u> <u>Salerno</u>, 631 F. Supp. at 1375 (finding that the illegal businesses of organized crime require constant attention and protection, and recognizing a strong incentive on the part of its leadership to continue business as usual).

Congress noted that defendants pose a danger to the community not only when they commit acts of violence, but when it

11

is likely that they will commit even non-violent crimes that are detrimental to the community. <u>See</u> Senate Report at 3195 ("language referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence"). In <u>Salerno</u>, 631 F. Supp. at 1371, the court held:

> In light of Congress' direction that '[w]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate' . . . .

<u>See also</u> <u>United States v. Colombo</u>, 777 F.2d 96, 99 (2d Cir. 1985). Ultimately, the court in <u>Salerno</u> detained two leaders of the Genovese organized crime family, noting:

> The activities of a criminal organization such as the Genovese Family do not cease with the arrest of its principals and their release on even the most stringent of bail conditions. The illegal businesses, in place for many years, require constant attention and protection, or they will fail. Under these circumstances, this court recognizes a strong incentive on the part of its leadership to continue business as usual. When business as usual involves threats, beatings, and murder, the present danger such people pose in the community is self evident.

631 F. Supp. at 1375.

12

###    3.    Elaborate Bail Packages Are Insufficient
to Protect the Community Against Violent
Organized Crime Defendants

Finally, the Second Circuit has repeatedly stated that even elaborate conditions of home detention cannot substitute for incarceration where the defendant is violent or cannot be trusted to comply with the conditions of release, particularly in organized crime cases.  In United States v. Dono, Nos. 07-5333-cr(L), 07-5334-cr(CON), 2008 WL 1813237 (2d Cir. April 23, 2008), for example, the Second Circuit overturned Judge Weinstein's decision to authorize pre-trial release for Colombo crime family members and associates, finding that the conditions imposed by the District Court – including bonds for the two defendants in the amounts of $2 million and $3 million, home detention, electronic monitoring, wiretapping family members' phones and a prohibition on contact with organized crime family members – were still insufficient to ensure the defendants' compliance with the terms of their pretrial release.  See also Ferranti, 66 F.3d at 543-44 (rejecting $1 million bail secured by real property); United States v. Orena, 986 F.2d 628, 630-33 (2d Cir. 1993)(rejecting $3 million bail secured with real property, in-home detention, restricted visitation and telephone calls and electronic monitoring); Colombo, 777 F.2d at 97, 100 (rejecting $500,000 bail secured with real property).  In Dono, the Circuit found that in light of the defendants' violent criminal acts and

13

their intimidation of victims and witnesses, "the idea that 'specified conditions of bail protect the public more than detention is flawed' because, among other reasons, '[t]hese conditions would at best elaborately replicate a detention facility without the confidence of security such a facility instills.'"   Id. (quoting United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993)).

The Second Circuit has repeatedly viewed home detention and electronic monitoring as insufficient to protect the community against dangerous individuals.  In United States v. Millan, 4 F.3d 1039, 1048-49 (2d Cir. 1993)(citations and internal quotations omitted), the Second Circuit held that:

> Home detention and electronic monitoring at
> best elaborately replicate a detention
> facility without the confidence of security
> such a facility instills. If the government
> does not provide staff to monitor compliance
> extensively, protection of the community
> would be left largely to the word of [the
> defendants] that [they] will obey the
> conditions.

See also Orena, 986 F.2d at 632 ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks and citations omitted).

Similarly, courts in this district have denied dangerous defendants bail in recognition of the Second Circuit's dim view of the effectiveness of home detention and electronic

14

monitoring.  See, e.g., United States v. Cantarella, 2002 WL
31946862, *3-4 (E.D.N.Y. 2002)(Garaufis, J.)(adopting "principle"
of "den[ying] bail to 'dangerous' defendants despite the
availability of home detention and electronic surveillance and
notwithstanding the value of a defendant's proposed bail
package"); Agnello, 101 F. Supp. 2d at 116 (Gershon, J.) ("the
protection of the community provided by the proposed home
detention remains inferior to that provided by confinement in a
detention facility"); United States v. Masotto, 811 F. Supp. 878,
884 (E.D.N.Y. 1993)(rejecting bail because "the Second Circuit
appears to be saying to us that in the case of 'dangerous
defendants' the Bail Reform Act does not contemplate the type of
conditions suggested by this Court [including home confinement
and electronic monitoring] and that, even if it did, the
conditions would not protect the public or the community, given
the ease with which many of them may be circumvented").
Electronic monitoring of the defendants here could not prevent
them from directing others to influence or even intimidate
victims and witnesses.

**III. Government's Motion for Detention**

The government moves for a permanent order of detention
with respect to the defendants Theodore Persico, Jr., Edward
Garofalo, Jr., Michael Persico, James Bombino and Thomas
Petrizzo, each of whom poses a danger to the community.

Detailed below is a proffer of the relevant facts in support of the pretrial detention of each of these defendants. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000)(government entitled to proceed by proffer in detention hearings); Ferranti, 66 F.3d at 542 (same).

### A.  **THEODORE PERSICO, JR.**

Theodore Persico, Jr., is a long-standing member of the Colombo family who currently serves in its administration. Persico, Jr. is charged in Count One with racketeering conspiracy, which includes predicate acts for extortion and fraud.[2]  Persico, Jr. is also charged with wire fraud conspiracy. If convicted as charged, Persico, Jr. faces a term of 20 years' imprisonment on each count, terms that may be run consecutively.

The government seeks to have a permanent order of detention entered against Persico, Jr. on the grounds that he is a danger to the community, and because, for the sake of the Colombo family as well as for his own benefit, he has shown a willingness to obstruct justice by tampering with a witness.  In

---

[2]   Persico, Jr. has previously been convicted in 1988 of, among other charges, criminal sale of a controlled substance in the first degree, a crime for which he was ultimately sentenced to an indeterminate term of imprisonment of 5 to 15 years, and, in 2008, of racketeering, including predicate acts of extortionate collection of credit and extortion, for which he was sentenced to a term of imprisonment of 42 months.  Perisco, Jr. was on parole at the time of the racketeering offense that led to his 2008 conviction, and is currently serving a term of supervised release following his racketeering conviction.

16

addition, Persico, Jr., who is currently serving a term of supervised release, has continued his criminal conduct and criminal association while on supervised release and can therefore not be trusted to abide by the conditions of pretrial release.

### 1.   **Proffered Facts**

The government hereby proffers the following facts relevant to the charges lodged against Persico, Jr.

### a.   **Persico, Jr. is a Member of the Colombo Family's Administration**

Theodore Persico, Jr., a longstanding member in the Colombo family, currently is a member of its administration.  The government will establish Persico, Jr.'s position in the Colombo family through the testimony of cooperating witnesses, consensual recordings and surveillance evidence.   For example, on July 15, 2009, co-conspirator James Bombino advised a cooperating witness in a conversation that was consensually recorded that Persico, Jr. had been made underboss of the Colombo family.  During the same conversation, another co-conspirator advised that Persico, Jr., following his release from prison, had previously served as the street boss.[3]

Notably, Persico, Jr. himself has admitted the existence of the Colombo family and his (and others') position in

---

[3]     Persico, Jr. was released from prison on June 4, 2008.

17

the family during consensually recorded conversations.  For example, on May 19, 2009, in response to a question of whether Benny Colombo belonged to the Colombo family, Persico, Jr. stated, "No, we're the Colombos."  On July 30, 2008, shortly after the May 29, 2008 arrest of the former acting boss Thomas Gioeli in <u>United States v. Curanovic, et al.</u>,08 CR 240 (BMC) (E.D.N.Y.), Persico Jr. not only discussed the existence of the Colombo and Gambino crime families, but also told a cooperating witness that Benji Castellazo was the new acting boss of the Colombo family and that Richard Fusco was its consigliere. Persico, Jr.'s co-defendants have also discussed the existence of the Colombo family.  For example, on July 25, 2006, Garofalo told a cooperating witness in reference to the upcoming trial of Alphonse Persico, the then acting boss of the Colombo family, that "Mush" (referring to Andrew Russo) would run the Colombo family as soon as he was no longer on supervised release.[4]

---

[4]    Alphonse Persico and his co-defendant John DeRoss were initially tried between September 25, 2006 and November 3, 2006, and following a mistrial, were re-tried in 2008, where they were convicted of murder in-aid-of racketeering, among other charges, and were sentenced to life imprisonment.  <u>United States v. Persico, et al.</u>, 04 CR 911 (JS) (E.D.N.Y.).  Russo was last arrested on September 21, 1998, <u>see</u> <u>United States v. Andrew Russo</u>, 98-CR-817 (DGT) and, following his conviction after a jury trial, on obstruction of justice and witness tampering charges, was sentenced to a term of imprisonment of 51 months, followed by three years of supervised release.  Russo was released from prison on or about March 23, 2007.

### b.   Perisco, Jr. Constitutes a Danger to the Community and Should Be Detained

As discussed above, Persico, Jr. is a member of the administration of the Colombo crime family with a violent past who has continued to engage in acts of violence, while serving a term of supervised release.

### 1.   Nature and Circumstances of the Crimes Charged

Persico, Jr. is charged with, among other crimes, RICO conspiracy and extortion, crimes of violence.  These charges favor detention.  With respect to the extortion racketeering act charged against Persico, Jr., the evidence consists principally of the testimony of a cooperating witness and numerous consensual recordings.  Notably, in speaking with John Doe #2, a victim from whom Persico, Jr. extorted protection money, on February 4, 2008, Persico, Jr. advised him in regard to John Doe #2's problem with other mobsters from whom Persico, Jr. had offered to provide protection,

> Listen, listen, listen; if it was up to me, I'd go get a gun and shoot them, or stab them or beat them up when I seen 'em.  But you're not me. You're a guy who wants to work and make a living, I think.  I got nothing.  They can't fuck with me because I got nothing to lose and they got everything to lose.  You can't fuck with them because you've got everything to lose and nothing to gain by getting physical.  I can get physical all day long. . . . I got nothing to lose, I can get crazy.  I don't give a fuck; what are you going to do, put me in jail?  What am I going to lose; my wife, my kids, my house that I own, my $2

19

million house that I own, or my car; I don't own
nothing.  I got no wife, I got no kids.  I can act
like a fool.  I'm telling you what I can do, I
know you can't do that, I know you don't want to
do that.

### 2.  History and Characteristics of the Defendant

In 2008, Persico was convicted, upon his plea of
guilty, to racketeering charges, with predicate acts of extortion
and extortionate collection of credit – a crime of violence.
During his plea allocution, Persico admitted threatening violence
to a victim and his family, stating "On November 23, 2004, I
said, 'No.  You know what you can do, bring your brother-in-law
by tonight so I can give him a fucking beating, and then he can
tell his father that I gave him a fucking beating.  That's what
we're gonna do.  I'll take it out on his kids, that's all, until
he fucking does the right thing.'" (United States v. Theodore
Persico, Jr., et al., 05 CR 351 (CBA), Transcript of Guilty Plea
at 27 (Sept. 28, 2005)).

In 1988, Persico, Jr. was convicted, following trial,
of, among other crimes, narcotics trafficking in violation of New
York law and ultimately sentenced to a term of 5 to 15 years'
imprisonment.  Persico, Jr. was released on parole from prison on
April 28, 2004 and, almost immediately upon his release, began
committing crimes, including those charged in his 2005 case.

Following his release from prison after his 2008
federal conviction, Persico, Jr. began a three year term of

20

supervised release.  The current charges are crimes while committed on supervised release, showing yet again that Persico, Jr. cannot comply with court-ordered conditions of release.

In addition to the charged crimes, Persico, Jr. has been involved in several uncharged crimes of violence.

For example, on May 25, 2004, Persico, Jr. was consensually recording while meeting with Edward Garofalo, Jr. and a witness who was cooperating with the government.  During that meeting, the witness relayed to Persico, Jr. and Garofalo, Jr. that he had learned that an associate of Colombo family soldier Craig Marino had been disrespecting Garofalo, Jr. Persico, Jr. and Garofalo, Jr. then arranged to meet Persico, Jr.'s brother Carmine L. Persico, a Colombo family associate, and Colombo associate Walter Samperi, who provided Persico with a gun.  All then drove to meet Craig Marino to seek permission to kill the associate.  The following exchange occurred while the conspirators were on the way to meet Marino:

> Persico:  Where's the thing?  Go get it for me, bring it to me. . . .
>
> Samperi:  What you could go better.  I didn't get a chance to clean you.
>
> Persico:  I don't need you to clean. Just give me the thing.
>
> Garofalo: No you ain't carrying (U/I)
>
> Samperi:  Now you got my prints all over, you're gonna need (U/I)

Persico:  I'm not gonna leave the gun anywhere.
          My prints are on it.

Samperi:  Yeah, it's an automatic, the thing could
          fly out.

Persico:  Hey, Walter, I know how to shoot.  Give
          me the gun.

Samperi:  What do you catch the shells after they,
          they . . .?

Persico:  Just give me the gun. . . . Where's the
          gun?

Garofalo: Tell him to meet us over there and sit
          in the car.  They know what's up.
          Somethin' happens, they get out of the
          car.

          *    *    *    *    *

Samperi:  What happened?  I don't know what
          happened.

Persico:  Some kid is talking shit.  I'm gonna go
          talk to him.

          *    *    *    *    *

Persico:  Friends with Craig Marino? . . . Yeah,
          alright, just give me the gun and don't
          worry about it.  What is the problem? .
          . .  I don't clean the thing.

Garofalo: He drives, you clean?

Samperi:  You gotta clean the bullets.

Garofalo: He drives, you clean.


In addition, Persico, Jr. has recently advised his co-
conspirators that, in contemplation of a future arrest, that he
planned to "go out in a blaze," referring to killing people

22

suspected of cooperating.  For example, on January 23, 2010, James Bombino advised another cooperating witness, in a conversation that was consensually recorded, that "Teddy [referring to Persico, Jr.] told him to give him a list because, before Teddy goes, he is going to take care of everybody.  Teddy said to give him the list of drivers with big mouths, give him this, give him that, there is no doubt he is going out in a blaze."

### 3.    Seriousness of Danger Posed by the Defendant's Release

Based on the evidence proffered above, and Persico's blood oath to the Colombo family, his release necessarily will pose a danger to the community.

### 4.    Evidence of the Defendant's Guilt

The government's evidence of Persico, Jr.'s guilt of the charged crimes is strong.  First, as to the racketeering conspiracy charge, the evidence of the existence and nature of the Colombo family, as well as Persico, Jr.'s involvement in that criminal enterprise, is strong, as detailed above.  Second, the crimes charged as racketeering acts and in Count 4 are supported by consensual recordings which corroborate the testimony of the available witnesses as to each crime.

   c. **Persico, Jr. Should Be Detained**
     **Due to His Willingness to Violate**
     **The Conditions of Supervised Release**
     **and Obstruct Justice**

As detailed above, Persico, Jr. has a history of committing crimes while on supervised release, showing that he cannot be trusted to abide by conditions set by the Court.  In addition, during the pendency of his 2005 case, Persico, Jr. was indicted for conspiring to tamper with a witness and with witness tampering resulting from his and his defense team's efforts to tamper with an extortion victim by attempting to corruptly persuade that victim to sign an affidavit falsely alleging that he had never been threatened by Persico, Jr. or his co-defendants.  Persico, Jr.'s history of obstruction compels his detention in this case.

As Magistrate Levy held in detaining a Genvoese family captain based on a single instance of past obstructive conduct, "The Second Circuit has made clear that 'obstruction of justice has been a traditional ground for pretrial detention by the courts, even prior to detention for dangerousness which was instituted by the Bail Reform Act of 1984." United States v. Cirillo, Cr. No. 05-212 (SLT), slip op. at 9 (E.D.N.Y. 2005)(Genovese family acting bosses Dominick Cirillo and Lawrence Dentico, as well as Genovese family captain Anthony Antico, detained as dangers to the community), aff'd, 149 Fed. Appx. 40 (2d Cir. 2005)(citing Lafontaine, 210 F.3d at 134).  Judge Levy

further explained, "[the defendant] has demonstrated disregard for the judicial system" and his prior witness tampering "was in furtherance of efforts to insulate members of organized crime from investigation by law enforcement authorities." <u>Cirillo</u>, slip op. at 9.

In sum, in light of the nature of the charged crimes, the history and characteristics of this defendant, including his history of committing crimes while on supervised release and engaging in witness tampering, there are no conditions or combinations of conditions that will ensure the safety of the community.

### B.   <u>EDWARD GAROFALO, JR.</u>

The defendant Edward Garofalo, Jr. is charged with racketeering conspiracy in Count One, and as part of this count, he is charged in racketeering acts with embezzlement, attempted extortion and conspiracy to commit extortion. Garofalo is also charged in two substantive counts relating to the embezzlement of union benefit funds.

The extortion-related racketeering acts constitute crimes of violence pursuant to the Bail Reform act. <u>See</u>, <u>e.g.</u>, N.Y. Penal Law § 155.05 (defining "by extortion," in relevant part, as "a person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if

the property is not so delivered, the actor or another will . . . cause physical injury to some person in the future"); 18 U.S.C. § 3156(a)(4)(A) (defining "crime of violence" as having as element of offense "the use, attempted use, or threatened use of physical force against the person or property of another"). Garofalo faces a statutory maximum penalty of twenty years' imprisonment on the racketeering conspiracy and a maximum penalty of five years' imprisonment on the embezzlement and conspiracy counts.

The government seeks a permanent order of detention as to Garofalo on the grounds that he is a danger to the community.

### 1. Garofalo Constitutes a Danger to the Community and Should Be Detained

As discussed above, Garofalo, Jr. is an associate of the Colombo family who is willing and able to use violence to further the goals of the Colombo family.

### a. Nature and Circumstances of the Crimes Charged

As to the extortion of John Doe #1, Garofalo, Jr. was consensually recorded advising a cooperating witness to tell the victim that Garofalo, Jr. wanted $10,000 or that Garofalo, Jr. would "break his fuckin' head." As to the conspiracy to extort John Doe #2, who was seeking the protection of Persico, Jr. and the Colombo family in an effort to be moved from the Gambino crime family, Garofalo, Jr., in a consensually recorded conversation, advised if John Doe #2 did not compensate Persico,

26

Jr. for Persico, Jr.'s getting him moved to the Colombo crime
family, Persico, Jr. should withdraw his protection of John Doe
#2 from members of the Gambino family, thereby causing a risk of
violence to John Doe #2.

### b. History and Characteristics of the Defendant

As detailed above, following a perceived insult to
Garofalo, Jr., Garofalo, Jr. and Persico, Jr. got a gun and
attempted to get permission to kill the person who insulted
Garofalo, Jr.  In addition to this event, Garofalo, Jr. himself
has assaulted many individuals.  For example, Garofalo, Jr. has
advised a witness cooperating with the government of several
violent assaults Garofalo, Jr. committed.  Specifically,
Garofalo, Jr. told a cooperating witness that he, using a
baseball bat, had assaulted an employee and a business associate
whom he suspected of cheating him in the late 1990s.  Garofalo,
Jr. also bragged in or about late 2003 or early 2004 that he had
beaten another employee who had complained to Garofalo, Jr. about
his wages, until that employee was unconscious, and then directed
that the victim be dragged into the street so that he would not
die on the business premises.  In 2004 or 2005, Garofalo, Jr.
also assaulted another employee who had complained to the union
about his wages, hitting him on the head with a broomstick.
Garofalo, Jr. then warned the employee that next time Garofalo,
Jr. would use a pipe.  Additionally, in 2004 or 2005, Garofalo,

27

Jr. assaulted a truck driver who blew his horn at Garofalo, Jr., hitting him in the face so hard that the truck driver collapsed.

Accordingly, Garofalo, Jr.'s extensive history of violence including violence against those perceived to have disrespected him favor detention.

### c. Seriousness of Danger Posed By The Defendant's Release

As described above, Garofalo, Jr. is associated with a violent criminal enterprise and in furtherance of its objectives, has committed violent crimes. Garofalo, Jr. has demonstrated a willingness to resort to violence anyone who disrespects or challenges him.

### d. Evidence of the Defendant's Guilt

The government's evidence of Garofalo, Jr.'s guilt on the charged crimes is strong. The proof of Garofalo, Jr.'s association with the Colombo family is overwhelming, including, among other evidence, his and his co-conspirators' statements on consensual recordings, testimony by cooperating witnesses, surveillance photographs and documentary evidence. As for the racketeering acts and substantive crimes for which Garofalo, Jr. is charged, the evidence of these crimes consists of the testimony of witnesses as well as consensual recordings and numerous false documents submitted by Garofalo, Jr. and his wife in furtherance of their double-breasting scheme.

In sum, given Garofalo, Jr.'s history of violent

conduct and threats and his participation in organized crime,
there is simply no condition or combination of conditions that
would "reasonably assure the safety of any other person and the
community."  18 U.S.C. § 3142(e).

C. **MICHAEL PERSICO**

The defendant Michael Persico is charged with charged
with racketeering conspiracy in Count One, and as part of that
count, he is charged with conspiring to extort and attempting to
extort three individuals - crimes of violence pursuant to the
Bail Reform Act - and with participating in a scheme to defraud
and commercial bribery scheme.  Persico is also charged in Counts
Four through Eight with the substantive crimes of wire fraud
conspiracy, extortion conspiracy and extortion that mirror those
crimes charged as racketeering acts.  Persico faces a statutory
maximum penalty of twenty years' imprisonment on each of the
racketeering conspiracy, extortion and wire fraud counts,
sentences that may be run consecutively.

The government seeks a permanent order of detention as
to Persico on the grounds that he is a danger to the community.

1. **History and Characteristics of the
Defendant and Nature of Crimes Charged**

While Persico does not have any prior conviction, his
role in the charged offenses demonstrate that he is influential
in the Colombo family and has directed others, including his co-
conspirators, to threaten individuals with economic harm, and

29

potentially physical harm, in order to further his and the
Colombo family's criminal objectives.

Persico is the son of Carmine "the Snake" Persico, Jr.,
the official boss of the Colombo family who is incarcerated for
life and is the brother of Alphonse "Allie Boy" Persico, who
served as the acting boss of the Colombo family prior to his
conviction in 2008.  He also is the cousin of his co-defendant,
Theodore Persico, Jr., an administration member.  During the
course of this investigation, Persico was surveilled meeting with
high-ranking members of the Colombo family.  For example, on July
18, 2009, Persico was surveilled meeting with Theodore Persico,
Jr., Thomas Petrizzo and Ralph DeLeo, then the street boss of the
Colombo family.

In light of his power and influence, Persico has the
ability to direct others to commit crimes or threaten acts of
violence.  For example, Persico directed his co-defendant James
Bombino to threaten employees and the owner of Testa Corporation
in order to ensure that Testa Corporation would pay the company
that Bombino, Persico and Persico, Jr. controlled, the extortion
that is charged in Counts 7 and 8 and in Racketeering Act 6.  In
exchange for a continuing kickback payment, a Testa foreman
arranged for the hiring of the defendants' company, All Around
Trucking, to cart construction debris from two construction job
sites in New York City: the Newtown Creek wastewater treatment

plant in Queens, New York and the World Trade Center construction
site.  As part of the scheme, Bombino, Persico, Persico, Jr.
concealed from Testa Corporation that All Around Trucking's
invoices to Testa Corporation included the amount of the cash
kickback payments.  Testa fell behind on payment to All Around
Trucking and by late 2009 owed All Around Trucking several
hundred thousand dollars.  On October 29, 2009, Bombino, in a
consensually-recorded conversation, advised a cooperating witness
about Michael Persico's and Bombino's efforts to be paid by Testa
Corporation.  Bombino advised that Persico

> says, well, threaten her.  I said, you want me to
> threaten her?  He said, I don't mean threaten her
> physically, I mean threaten the job.  I said,
> okay.  I did it right there in front of him.  He
> was right there in front of me.  He heard every
> word I said.  But, he says, oh, we got to light a
> fire under their ass.  Obviously.  Where's the
> check?  They're shakin' in their boots over us.

Following that conversation, Bombino, on December 17,
2009, advised the cooperating witness, in a consensually recorded
conversation, about a meeting between the owner of Testa
Corporation, Michael Persico, Colombo family soldier Thomas
Petrizzo and himself, regarding continuing threats made by the
defendants to encourage the owner to pay the amount owned to the
company controlled by Bombino, Persico and Persico, Jr.  Bombino
advised,

> Michael [referring to Michael Persico] told me at
> the end, he said, 'Yo bro, you said all the right
> things, all the right . . .'  I said, 'Michael,

31

> was I alright?'  He said, 'You said all the right
> things.'  He said, 'Everything you do . . .'
> 'Cause you didn't prep me before, I didn't even
> know that was [the owner].'  He says, 'That was
> [the owner].'  I didn't even know.  I says, 'If I
> would have known . . . you didn't prep me.'  I
> says, 'You want me to yolk the guy up and hit him
> over the fuckin' head with a coffee pot, you know,
> what do you want to do with this guy?'  He
> laughed.  He says, 'Nah-hah.'  He says, 'You said
> all the right things, everything was perfect, we
> had to do it this way, this is the way, so when we
> gotta do what we have to do to get our money, they
> can't say nothin' because we gave them the
> opportunity to pay us.'

This discussion is telling for several reasons.  First, it

presumes that recourse to violence is a legitimate option for

these defendants.  Second, ominously, Persico advised Bombino

that not resorting to violence at this time has set the stage for

the defendants to escalate matters if Testa Corporation did not

pay the defendants' company.  Following the meeting discussed on

December 17, 2009, Testa Corporation began paying the defendants'

company the money owed to it.

In addition, during the course of an extortion by James

Bombino and Michael Persico of a furniture store owner to seek

repayment of a loan, Persico, upon Bombino's request, required

the furniture store's owner to accept Bombino's control of his

store until the owner repaid the monies owed to Bombino and

Persico.

In light of the above evidence regarding the charged

crimes, given Persico's willingness to use violence, if

32

necessary, and his ability to direct others to make threats and to engage in acts of violence, Persico's "history and characteristics" favor detention.

### 2. Seriousness of Danger Posed By The Defendant's Release

As described above, Persico is associated with a violent criminal enterprise and, in furtherance of its objectives, has committed acts of extortion.

### 3. Evidence of the Defendant's Guilt

The government's evidence of Persico's guilt on the charged crimes is strong.  The proof of Persico's association with the Colombo family is overwhelming, including, among other evidence, his and his co-conspirators' statements on consensual recordings, testimony by witnesses, and surveillance photographs. Persico and his co-conspirators were consensually recorded discussing the crimes charged in this case.

In sum, given Persico's history of directing others to threaten violence and economic harm and his participation in organized crime, there is simply no condition or combination of conditions that would "reasonably assure the safety of any other person and the community."  18 U.S.C. § 3142(e).

### D. JAMES BOMBINO

The defendant James Bombino is charged with racketeering conspiracy in Count One, and as part of that count, he is charged with extortion and extortion conspiracy - crimes of

33

violence pursuant to the Bail Reform Act - and with participating in a wire fraud and a commercial bribery scheme.  Bombino is also charged in five substantive counts which cover the same conduct. Bombino faces a statutory maximum penalty of twenty years' imprisonment on each of the racketeering conspiracy, extortion and wire fraud counts, sentences that may be run consecutively.

The government seeks a permanent order of detention as to Bombino on the grounds that he is a danger to the community.

**1.   Nature and Circumstances of the Crimes Charged**

As summarized above, Bombino admitted during several consensual recordings that he made threats to the victims in this case, on the direction of, or under the supervision of, Michael Persico and Theodore Persico, Jr., in an effort to earn money for the Colombo family.  In addition, during the course of an extortion by James Bombino and Michael Persico of a furniture store owner to seek repayment of a loan, Persico, upon Bombino's request, required the furniture store's owner to accept Bombino's control of his store until the owner repaid the monies owed to Bombino and Persico.

**2.   History and Characteristics of the Defendant**

In light of Bombino's extensive participation in the charged crimes and his willingness to threaten violence and economic harm, including his willingness to take control of

34

businesses to ensure payment to himself and his co-conspirators, Bombino's "history and characteristics" favor detention.

### 3.   Seriousness of Danger Posed By The Defendant's Release

As described above, Bombino is associated with a violent criminal enterprise and in furtherance of its objectives, has committed violent crimes.

### 4.   Evidence of the Defendant's Guilt

The government's evidence of Bombino's guilt on the charged crimes is strong.  The proof of Bombino's association with the Colombo family is overwhelming, including, among other evidence, his and his co-conspirators' statements on consensual recordings, testimony by cooperating witnesses, and surveillance photographs.  As for the racketeering acts and substantive crimes for which Bombino is charged, the evidence of these crimes consists of the testimony of witnesses as well as numerous consensual recordings in which Bombino is discussing the charged crimes and documents prepared by Bombino and emails sent by Bombino that provide proof of the wire fraud and commercial bribery charges.

In sum, given Bombino's history of threatening violence and economic harm and his participation in organized crime, there is simply no condition or combination of conditions that would "reasonably assure the safety of any other person and the community."  18 U.S.C. § 3142(e).

E.    **THOMAS PETRIZZO**

The defendant Thomas Petrizzo is charged in Count Four with participating in a wire fraud conspiracy.  Petrizzo faces a statutory maximum penalty of twenty years' imprisonment.

The government seeks a permanent order of detention as to Petrizzo on the grounds that he is a danger to the community.

1.    **History and Characteristics**
      **of the Defendant**

The defendant has a history of committing fraud.  In 1995, before Judge Thomas C. Platt, Petrizzo pleaded guilty to charges of embezzlement from an employee benefit fund, in violation of 18 U.S.C. § 664 and defrauding a federally insured financial institution, in violation of 18 U.S.C. § 1344.  The charges related to (1) the embezzlement of funds from Local 707 of the Highway and Local Motor Freight Drivers, Dockmen and Helpers, New York and Vicinity Union ("Local 707"), by, among others, Petrizzo, who was a soldier in the Colombo crime family, and Victor J. Orena, who was at the time the head of the Orena faction of the Colombo family; and (2) Petrizzo's fraudulent scheme to obtain a multi-million dollar line of bank credit for his construction business by falsely inflating the company's accounts receivables and the value of its inventory.  In 1996, Petrizzo pleaded guilty in the District of New Jersey to charges of wire fraud, in violation of 18 U.S.C. § 1343.  The wire fraud charges related to Petrizzo's extortion of over $1.2 million from

36

a Swiss steel company that was involved in constructing the monorail at Newark International Airport.  Judge Platt, before whom the Eastern District of New York and District of New Jersey cases were consolidated for sentencing purposes, sentenced Petrizzo principally to 33 months' incarceration, $1,475,640 dollars in restitution and a $60,000 fine.

### 2.   Nature of Crime Charged

Petrizzo's role in the wire fraud conspiracy charged in this case demonstrates that he remains influential in the Colombo family, continues to exploit his connections to the highest-ranking members of the family to further his participation in criminal activity and has directed others, including his co-conspirators, to threaten individuals with economic harm, and potentially physical harm, in order to further his and the Colombo family's criminal objectives.

As noted, Petrizzo is a soldier in the Colombo family. He is also the father of Michael Persico's former wife.  During the course of this investigation, Petrizzo has met repeatedly with high-ranking members of the Colombo family.  Multiple consensual recordings captured conversations in which Michael Persico, Theodore Persico, Jr. and James C. Bombino referred to meetings between Petrizzo, Persico, Jr., Persico and Bombino which involved discussion of steps to be taken in furtherance of the charged wire fraud.  In addition, consensual recordings

37

captured several meetings in which Petrizzo discussed the charged wire fraud with a cooperating witness.  Moreover, as noted above, Petrizzo was surveilled on July 18, 2009 meeting with Ralph DeLeo, then the street boss of the Colombo family, Theodore Persico, Jr., who had recently been promoted to underboss of the Colombo family, and Michael Persico.

The consensual recordings show, specifically, that Petrizzo reported to Theodore Persico, Jr. and Michael Persico that he controlled demolition carting work at numerous large construction sites in New York and New Jersey, including, among others, the demolition of the General Motors plant in Linden, New Jersey, the Newtown Creek wastewater treatment plant in Brooklyn, New York, and the World Trade Center construction site.  Petrizzo stated that he controlled demolition projects and received compensation from demolition contractors, including ten percent of the value of jobs that he steered to Testa Corporation, even though he was not employed by the demolition contractors. Petrizzo boasted that if Testa Corporation did not compensate him as promised, he would inflict economic harm on the company and its owner, Steve Testa, by depriving it of further demolition contracts.  Petrizzo also boasted of his ability to override decisions taken by legitimate employees of the demolition contractors whom he controlled, including employees of Testa, and that he had influence with union officials, as a result of which

38

he has the power to terminate the employment of union laborers whom he deems unacceptable.

Petrizzo's own words also demonstrate that his power and influence included the ability to direct others to commit crimes or threaten acts of violence.  For example, Petrizzo explained to James C. Bombino and a cooperating witness on one consensual recording that members of LCN had sought his permission to assault a Colombo associate severely enough that he would end up hospitalized.  Petrizzo boasted that, due to his intervention, the associate was spared a beating.

Petrizzo's influence over demolition contractors is further demonstrated by his participation in the meeting, in late 2009, between the owner of Testa Corporation, Michael Persico, and James C. Bombino regarding continuing threats made by the defendants to encourage the owner to pay the amount owned to the company controlled by Bombino, Persico and Persico, Jr.  As noted, Bombino's report of the meeting, which was captured on a consensual recording, presumes that recourse to violence was a legitimate option for the Colombo family in seeking payment of debts owed by Testa to the Colombos.

In light of the above evidence, given Petrizzo's ability to inflict economic harm and to direct others to make threats and to engage in acts of violence, the nature of Petrizzo's role in the charged crime favors detention.

3.   **Seriousness of Danger Posed By
The Defendant's Release**

As described above, Petrizzo is associated with a
violent criminal enterprise and, in furtherance of its
objectives, has committed acts of extortion.

4.   **Evidence of the Defendant's Guilt**

The government's evidence of Petrizzo's guilt in the
charged wire fraud conspiracy is strong.  The proof of Petrizzo's
association with and rank in the Colombo family is overwhelming,
including, among other evidence, his and his co-conspirators'
statements on consensual recordings, testimony by cooperating
witnesses, and surveillance photographs.  Petrizzo admitted on
consensual recordings to accepting cash kickback payments based
on the number of truckloads of construction debris that All
Around removed from the Newtown Creek and World Trade Center
sites.

In sum, given Petrizzo's ability to direct others to
threaten violence and economic harm and his participation in
organized crime, there is simply no condition or combination of
conditions that would "reasonably assure the safety of any other
person and the community."  18 U.S.C. § 3142(e).

40

## IV.  Conclusion

For the reasons cited above, the government hereby moves for a permanent order of detention with respect to defendants Theodore Persico, Jr., Edward Garofalo, Jr., Michael Persico, James Bombino and Thomas Petrizzo.

Dated:     Brooklyn, New York
           March 9, 2010

                                    Respectfully submitted,

                                    BENTON J. CAMPBELL
                                    United States Attorney
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

AMY BUSA
MICHAEL TREMONTE
DUNCAN LEVIN
Assistant United States Attorneys
     (Of Counsel)