

**U.S. Department of Justice**

*United States Attorney
Eastern District of New York*

MEF:TJS:DSM
F.#2004R00961

*One Pierrepont Plaza
Brooklyn, New York 11201*

*Mailing Address:* 147 Pierrepont Street
Brooklyn, New York 11201

August 24, 2005

The Honorable Carol Bagley Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York

      Re:  United States v. Theodore Persico, Jr., et al.
           Criminal Docket No. 05-351 (CBA)

Dear Judge Amon:

      The government submits this letter in opposition to the defendant Theodore Persico, Jr.'s application for release on bail. The defendant is a member of the Colombo Organized Crime Family of La Cosa Nostra (the "Colombo family"). The defendant is charged with racketeering, extortion and, as a result of his post-indictment conduct, now stands charged with witness tampering. Enclosed is a copy of the superseding indictment returned last week that adds witness tampering charges against Persico, Jr.

I.    <u>Legal Standard</u>

      Both the language of the Bail Reform Act, 18 U.S.C. §§ 3141 <u>et seq</u>. (the "Act") and its legislative history recognize that there is a "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community." S. Rep. No. 225 98th Cong., 1st Sess. 6-7, <u>reprinted in</u> 1984 U.S. Code Cong. & Admin. News (hereinafter "Senate Report") 3182, 3188-89. Under the terms of the Act, a court should detain a defendant if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §

3142(e). A finding a dangerousness must be supported by clear and convincing evidence. A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985)

The factors to be considered in determining whether the applicable standard has been met include: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendants, (3) the seriousness of the danger posed by the defendants' release, and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g).

Title 18, United States Code, Section 3156(a)(4) defines the term "crime of violence" as "(A) an offense that has [as] an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." As the legislative history to the Act makes clear, danger to the community is not limited to violent crimes, but to any crimes that would harm the community. See Senate Report at 3195-96 ("language referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence").

"[O]bstruction of justice has been a traditional ground for pretrial detention by the courts, even prior to detention for dangerousness which was instituted by the Bail Reform Act of 1984." United States v. LaFontaine, 210 F.3d 125, 134 (2d Cir. 2000); accord United States v. Canaterella, 2002 WL 31946862, at *2 (E.D.N.Y. Nov. 26, 2002); United States v. Agnello, 101 F. Supp. 2d 108, 112 (E.D.N.Y. 2000). Accordingly, where, as here, a defendant is charged with obstruction of justice, pretrial detention is particularly appropriate. In LaFontaine, the district court revoked the defendant's bail based on evidence that the defendant had sought to influence witnesses while released on bond. The defendant appealed, arguing that in the context of a non-violent case, elaborate release conditions, including home detention, electronic monitoring, electronic surveillance of his telephone and relocation to a different state would assure the safety of the community. The Second Circuit upheld the lower court's revocation of bail, noting a prior decision that had found that a "single incident of witness tampering constituted a 'threat to the integrity of the trial

2

process, rather than more generally a danger to the community,' and was sufficient to revoke bail." Id. at 134. (quoting United States v. Gotti, 794 F.2d 773, 779 and n.5 (2d Cir. 1991)). The court further observed that "pretrial detention was even more justified in cases of violations related to the trial process (such as witness tampering) than in cases where the defendant's past criminality was said to support a finding of general dangerousness." LaFontaine, 125 F.3d at 134.

II. Background

On May 5, 2005, contemporaneously with Persico, Jr.'s arrest for racketeering and extortion, the government submitted a letter to the Honorable Robert M. Levy, U.S. Magistrate Judge in support of its request for the pre-trial detention of Persico, Jr. As outlined in the May 5, 2005, letter, upon being released from prison in April 2004, Persico, Jr. almost immediately began committing crimes. In May 2004, in flagrant violation of his parole, he possessed a firearm. Subsequent investigation revealed Persico, Jr.'s involvement in additional violent crimes.

According to several cooperating witnesses and confidential sources of the Federal Bureau of Investigation ("FBI"), Persico, Jr. is a soldier in the Colombo family and has been since the late 1980s. In 1988, Persico, Jr. was convicted of criminal sale of a controlled substance in New York State. He was sentenced to 20 years to life in prison and was released in April 2004.

III. Extortion of John Doe #1 and John Doe #2

In November and December 2004, Persico, Jr. and his co-defendants Carmine L. Persico and Andre D'Apice had several conversations regarding their efforts to collect money from John Doe #1 and John Doe #2.[1] Those conversations were intercepted and recorded pursuant to court authorization. Persico, Jr. discussed the amounts of money to be collected and the extortionate means that should be used. For example, in a November 23, 2004 telephone call, Persico, Jr. instructed D'Apice to bring the son of John Doe #1 to Persico, Jr. so that he could give the individual a "fuckin' beatin'." Persico, Jr. also stated that the individual could go tell John Doe #1. Persico, Jr. added that he would "take it out on his [John Doe #1's] kids, that's all, until he [John Doe #1] fuckin' does the right thing."

---

[1] Carmine L. Persico and Theodore Persico, Jr. are brothers, and Andre D'Apice is their cousin.

3

IV. <u>Possession of a Firearm</u>

On or about May 25, 2004, Persico, Jr. was recorded by a cooperating witness in conversation with several individuals, including his brother Carmine L. Persico. Persico, Jr. was contemplating violent action against George Fanelli, an associate of the Colombo family. Indeed, Persico, Jr. stated at one point that he was going to "threaten the kid right now." In advance of a potentially violent meeting with Craig Marino, another soldier of the Colombo family, regarding the associate, Persico, Jr. made sure that he was armed. Carmine L. Persico and another individual brought a handgun to Persico, Jr. When Persico, Jr. asked for the weapon, Carmine L. Persico stated the he didn't "get a chance to clean it." Persico, Jr. replied: "I don't need you to clean it just give me the gun." As Carmine L. Persico protested because of the presence of his fingerprints on the gun, Persico, Jr. stated: "Look, I know how to shoot just give me the gun." Persico, Jr. needed a firearm, which was in violation of his parole, in case his meeting with Marino and Fanelli resulted in a violent altercation.

Persico, Jr. was also heard complaining about the fact that Carmine L. Persico and the other individual brought a gun with bullets that were "dirty," meaning they had fingerprints. Persico, Jr. stated: "They come there the fucking thing is dirty. How do you keep a pistol with fuckin' dirty bullets in it in the first place? You got an automatic pistol, you clean the bullets, you put them in the fuckin' clip, and the clip is ready, whenever you're ready."

Based on this conduct alone, Persico Jr. has shown himself to be an extremely dangerous individual. Given that it came while he was on parole and just one month after serving 16 years in jail, Persico Jr.'s conduct demonstrates that he cannot be trusted to abide by any court-ordered restrictions on his activity pending trial.

V. <u>Witness Tampering</u>

Persico Jr. did not cease use of the Colombo family's tried and true methods of operation – violence and intimidation - following his release on parole, and even his detention in this matter, has not stopped him from continuing to commit crime. Last week, he was indicted for witness tampering and witness tampering conspiracy with regard to his attempt to get John Doe #1, through his agents, to lie for him, thereby victimizing this individual a second time.

Following Persico, Jr.'s May 2005, arrest on racketeering and extortion charges, a private investigator named Patrick Bombino made contact with John Doe #1.[2] Without debriefing John Doe #1 about what happened regarding the extortionate collection of credit charged here, Bombino asked John Doe #1 to sign an affidavit on Persico, Jr.'s behalf stating that none of the defendants in this case, including Persico, Jr., had threatened him. In August 2005, during a meeting with John Doe #1, wherein Bambino presented John Doe #1 the above-described affidavit for his signature, Bambino remarked that he had spoken to "Teddy" (Persico, Jr.), and related that Persico, Jr. asked "Does this guy want to help me or he don't want to help me?"

Given that Persico Jr.'s way of dealing with John Doe #1 prior to the indictment was to, among other things, send five of his henchmen, including defendant Carmine Persico, to intimidate John Doe #1 unless the money was paid, Persico Jr.'s message to John Doe #1 that he wanted "help" could only be understood as a threat that John Doe #1 had better help or else. There is no doubt that Persico Jr. knows the truth of what he did to John Doe #1, and thus, his effort to obtain a "helpful" affidavit from John Doe #1 is nothing more or less than a knowing request for perjury.

John Doe #1, in fact, testified before a grand jury sitting in the Eastern District of New York in December 2004, prior to the indictment in this matter. That testimony, along with other evidence, including the extensive wiretapped conversations about John Doe #1, form the basis of the current indictment. When Bombino first made contact with John Doe #1, he advised the government, and we commenced an investigation into witness tampering and obstruction of justice. Calls and a meeting with Bombino were recorded with the permission of John Doe #1. Moreover, as part of the obstruction of justice investigation, he was directed to sign the false affidavit.

Just as Persico Jr. used fear and intimidation to obtain money from John Doe #1 and John Doe #2, he used it again to obtain self-serving false testimony that was drafted

---

[2]Bombino was not just retained for this litigation. He is Persico's personal investigator who, as revealed on several intercepted conversations during the wiretap, obtained the cellular telephone records of one of Persico Jr.'s ex-girlfriends so that he could determine if she was being unfaithful. Armed with those records, Persico, Jr. threatened a male with whom he believed the ex-girlfriend had a relationship.

apparently by either Bombino, Mr. Giannini, or Mr. Corozzo to suit Persico Jr.'s purposes, and not the facts. There was no attempt to debrief John Doe #1 by anyone from the defense team about what actually happened between John Doe #1 and the defendants.[3] The government respectfully submits that his anticipated testimony, however, along with several detailed intercepted conversations, will make clear Persico Jr.'s attempt to extort money owed to the Colombo family. In light of Persico Jr.'s pre- and post-indictment conduct, it is beyond question that Persico Jr. should be held without bail.

Given the post-indictment conduct, the government considers Bombino, Giannini and Corozzo as targets of the ongoing obstruction of justice/witness tampering investigation. In addition to the above-described conduct, on August 11, 2005, Corozzo sent a letter to the government (a copy is attached as Exhibit 2) advising it that John Doe #1 had advised him that the government was only to contact John Doe #1 through his lawyer. The government has confirmed with John Doe #1 and his lawyer that Corozzo's letter was false. It appears that the letter was designed to mislead the government and make John Doe #1 appear to be a hostile witness who would not agree to speak with the government.

This conduct merits serious examination. Accordingly, we believe that at the next Court appearance, the Court should conduct another <u>Curcio</u> proceeding with regard to Corozzo's continued representation, which has already been limited by the Court in the prior <u>Curcio</u> proceeding. If Persico Jr. is determined to keep Corozzo as counsel in this matter, the government intends to file a formal motion to disqualify based on the obstructionist conduct and the new charges.

Persico, Jr.'s attempt to tamper with a witness while under indictment, his long-term and undeterred devotion to the violent affairs of the Colombo family, his lack of respect for

---

[3] Attached as Exhibit 1 is the first version of the affidavit presented for signature, apparently drafted by Bombino, Giannini, or Corozzo, in which they were so unconcerned about the truth that they included a statement that the victim had not been threatened in the future. This further demonstrates that Persico, Jr. was not interested in obtaining a truthful version of events. Rather his focus was on obtaining a falsely exculpatory, self-serving statement designed to mislead the government and the Court.

the rules of judicial supervision, and the strength of the government's evidence require his pre-trial detention.

V.  Conclusion

Based on the foregoing, we respectfully request that defendant Theodore Persico, Jr., continue to be detained pending trial.

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York

By: _____
Deborah Mayer
Assistant U.S. Attorney
(718) 254-6241

cc: Joseph R. Corozzo, Esq.
    Joseph Giannini, Esq.
    Barry M. Fallick, Esq.
    Salvatore E. Strazzullo, Esq.

STATE OF NEW YORK )     AFFIDAVIT

RICHMOND COUNTY )

MY NAME IS MICHAEL BEHAR I AM

45 YEARS OLD I LIVE AT

I HAVE NEVER BEEN THREATENED BY

THEODORE PERSICO JR., ANDRE D'APICE, OR

CARMINE PERSICO IN THE PRESENT OR THE

FUTURE. I AM GIVING THIS STATEMENT

VOLUNTARALY AND NO ONE HAS PROMISED

ME ANYTHING.

                         MICHAEL BEHAR

SWORN TO BEFORE ME
THIS 22 DAY OF JULY 2005

# RUBINSTEIN & COROZZO, LLP
## COUNSELORS AT LAW

RONALD RUBINSTEIN
JOSEPH R. COROZZO

BRIANA L. HERMAN

260 MADISON AVENUE
22ND FLOOR
NEW YORK, N.Y. 10016

TELEPHONE (212) 545-8777
FAX (212) 679-1844

August 11, 2005

**VIA FACSIMILE 718-254-6081 &**
**First Class Mail**
Deborah Sue Mayer, Esq.
Assistant U.S. Attorney
One Pierrepont Plaza
Brooklyn, NY 11201

Re: *United States v. Theodore Persico, Jr., et al.*
**Dkt. No. 05-CR-351 (CBA)**

Dear Ms. Mayer:

Please be advised that the following persons who signed affidavits included as exhibits in support of Defendant Theodore Persico, Jr.'s bail application of August 10, 2005 are represented by counsel and have indicated that they are to be contacted only through their attorneys, whose contact information is included:

| | |
|---|---|
| Burim Osmani | Anthony F. Siriano, Esq.<br>2027 Williamsbridge Road<br>Bronx, NY 10461<br>Tel.: (718) 823-2600 |
| Michael Behar | Michael J. Ryan, Esq.<br>84 New Dorp Plaza<br>Staten Island, NY 10306<br>Tel.: 718-351-1111 |

Thank you for your attention to this matter. Should you have any questions please do not hesitate to contact me.

Very truly yours,

Joseph Corozzo (/2 B)