# Steve Zissou & Associates
## Attorneys at Law
42-40 Bell Boulevard, Suite 302
Bayside, New York 11361

Office   (718) 279-4500  
Facsimile (718) 281-0850

Email: stevezissou@verizon.net

**By Electronic Case Filing**

July 12, 2011

Honorable Sandra L. Townes
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *United States v. Edward Garofalo*
      10 Cr 147 (SLT)

Dear Judge Townes:

This letter submitted in support of Edward Garofalo's motion for reconsideration of this Court's entry of a permanent order of detention entered on April 29, 2010.

## Procedural History

On March 3, 2010, a sealed indictment was returned by a grand jury sitting in the Eastern District of New York charging James C. Bombino, Alicia Dimichele, Edward Garofalo, Jr., Michael D. Sciaretta, Michael J. Persico, Theodore N. Persico, Jr., Thomas Petrizzo and Louis Romeo with a variety of offenses including racketeering conspiracy. By motion dated March 9, 2010, the government moved for a permanent order of detention ("POD") for defendants Theodore Persico, Jr., Edward Garofalo, Jr., Michael Persico, James Bombino and Thomas Petrizzo. The lower court granted the government's request for a POD only as to Michael J. Persico and Theodore N. Persico, Jr.[1] All of the other defendant's who sought to be released on bail were granted release upon various combination of conditions.

In a proceeding held on March 12, 2010, Chief Magistrate Steven M. Gold, granted bail for Edward Garofalo based upon a package of conditions that included a $3,000,000.00 bond and 19 sureties, 16 of whom were sworn and signed the bond.[2] On March 15, 2010, the government requested a stay of the release order pending appeal to this Court. Following a hearing held on April 28-29, 2010, this Court reversed the order granting bail to Mr. Garofalo and entered a permanent order of detention.

---

[1] Theodore N. Persico, Jr. consented to the entry of a POD.

[2] The remaining sureties signed the bond on March 15, 2010.

By letter dated July 22, 2010, then counsel for Mr. Garofalo, Gino Singer, filed a letter with this Court asking for reconsideration of the entry of the POD. Following this letter submission, Mr. Singer filed two subsequent letters with the Court. The first was filed on August 05, 2010 (*ecf# 163*), and the second letter was filed on August 23, 2010 (*ecf #166*). The government filed a reply to the defendant's motion for reconsideration on August 24, 2010 (*ecf #167*).[3] Prior to the scheduling of the defendant's motion for reconsideration, Mr. Singer suffered a debilitating stroke. Present counsel filed a notice of appearance on December 28, 2010.

For the reasons set forth below, I respectfully request that the Court restore Mr. Garofalo to bail in this case.

I.   **The Bail Reform Act of 1984**

ln accordance with the Eighth Amendment's prohibition against excessive bail, 18 U.S.C. 3142(b) (the "Bail Reform Act") requires that a defendant be released on a personal recognizance or unsecured appearance bond "unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." See *U.S. Const. amend VIII* ("Excessive bail shall not be required..."); see also *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Because the Bail Reform Act limits the circumstances under which a district court may order pretrial detention, the Second Circuit has observed that unless the defendant has been charged with certain crimes enumerated in 18 U.S.C. § 3142(f), the Government may move to seek such detention "only when there is a serious risk that the defendant will flee, or obstruct or attempt to obstruct justice," *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

Presented with a motion for detention, the Court undertakes a two-step inquiry. "First, the court must determine whether the Government has established by a preponderance of the evidence that the defendant presents a risk of flight or obstruction of justice." *United States v. Khashoggi*, 717 F. Supp. 1048, 1049 (S.D.N.Y. 1989) (quoting *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988)). If the Government carries this initial burden, the Court must determine whether there are reasonable conditions of release that can be set or whether detention is appropriate. *Friedman*, 837 F.2d at 49; *United States v. Berrios*, 791 F.2d 246, 250 (2d Cir. 1986), cert. dismissed, 479 U.S. 978; 18 U.S.C.3142(c).

To support detention based on danger, the Government's proof must be clear and convincing, 18 U.S.C. § 3142(f)(2), while detention based on risk of flight must be proven by a preponderance of the evidence. *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (citing *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985); *United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986)). Furthermore, in making this determination, the Court must consider a set of four factors established by Congress. See 18 U.S.C. § 3142(g). These include "the nature of the offense, the weight of the evidence against the suspect, the history and character of the person charged, and the nature and seriousness of the risk to the community." *Khashoggi*, 717 F. Supp. at 1049 (quoting *Chimurenga*, 760 F.2d at 403). The Government"s task is not insubstantial at this second stage. ln most cases, release is the presumptive state. See 18 U.S.C. §§ 3142 (b) and (c).

---

[3] All of the filings are attached hereto for the Court's convenience.

"The court should also bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *Khashoggi*, 717 F. Supp. at 1049 (quoting *Shakur*, 817 F.2d at 195).

### A.   Length of Detention

The court may order the pretrial detention of a defendant so long as the detention does not amount to "punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). But "when detention becomes excessively prolonged, it may no longer be reasonable in relation to the regulatory goals of detention, in which event a violation of due process occurs." *United States v. Millan*, 4 F. 3d 1038, 1043 (1993). The Second Circuit has established a three-factor test that assesses: (1) the length of detention; (2) the extent to which the prosecution is responsible for delaying the start of the trial; and (3) "the strength of the evidence upon which the detention was based" in determining whether continued detention violates due process. *United States v. Orena*, 986 F.2d 628, 630 (1993).[4]

In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court, indicated that the point at which the length of detention becomes constitutionally excessive is the point at which the length of detention exceeds the regulatory goals set by Congress. *Salerno*, 481 U.S. at 747 n.4. This inquiry requires that courts balance those regulatory goals, and how the detention at issue furthers those goals, against the length of detention. As noted, the factors to be considered in such a balancing have been discussed by various courts. They include some of the factors relevant in the original detention decision (i.e. the seriousness of the charges, the strength of the government's case, the risk of flight or dangerousness to the community) as well as others unique to the due process concerns. Other factors include the length of time the defendant has been in custody as well as the length of time he or she is expected to remain in custody before trial. *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir. 1993), cert. denied, 511 U.S. 1011 (1994), and the extent to which the prosecution bears responsibility for the delay. *United States v. Gonzales Claudio*, 806 F.2d 334, 341 (2d Cir.), cert. dismissed, 479 U.S. 978 (1986).

There is no fixed time limit when the detention becomes excessive. The Second Circuit ordered the release of a detainee after 32 months where it concluded that due process could not "tolerate any further pretrial detention in this case." *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988) (defendant faced several more months in detention before his lengthy trial would even begin). See also, *United States v. Gonzales Claudio*, 806 F.2d 334 (2d Cir. 1986) (defendant released after 14 months where the delay involved the government's failure to disclose the existence of certain recordings). Although the Supreme Court has not resolved the issue, a number of circuit courts acknowledge that lengthy periods of detention may implicate due process concerns. *United States v. El-Hage*, 213 F.3d 74 (2d Cir. 2000); *United States v. Infelise*, 934 F.2d 103, 104 (7th Cir. 1991); *United States v. Tortora*, 922 F.2d 880, 889 (1st Cir. 1990); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989); *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988); *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986); *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1986).

---

[4] Section 3142(f) expressly authorizes reopening the detention hearing when material information "that was not known to the movant at the time of the hearing" comes to light.

II.     **A Balancing Of The Factors Set Forth In 18 U.S.C. § 3142(g), Together With Excessive Pretrial Incarceration And The Conditions Of Release Approved By Magistrate, Weigh Heavily In Favor Of Release**

As advanced in the attached motion to reconsider filed by predecessor counsel in August of 2010, this Court should release Mr. Garofalo on the combination of conditions that were proposed at his detention hearing before Chief Magistrate Gold.

In his letter/memorandum filed on August 23, 2010, counsel carefully and methodically makes the case that the government failed to establish by clear and convincing evidence that Garofalo was such a danger that no condition or combination of conditions might protect the community.  The moving papers also established that Garofalo was held in high regard by his friends and neighbors and that given the substantial conditions that were proposed and accepted by the Magistrate, there was little or no likelihood that anything untoward would happen were he to be released.

A.     **The Government Is Responsible For The Delay Of The Trial**

As the Court is aware, a trial was scheduled to commence in this matter on August 15, 2011. Mr. Garofalo was prepared to begin trial on the scheduled date and made his position clear in prior proceedings.  As of the date of this submission, Mr. Garofalo has been held in custody for more than 16 months.  By February 13, 2012, the current schedule trial date, he will have been in custody for almost *two years* and his 4-6 week trial only just about to begin. A review of the record of this case, makes it plain that the government bears the responsibility for this delay.

There is no disputing the fact that the genesis of the delay and resulting extended pretrial detention of the defendant was a motion to disqualify attorney Joseph Corozzzo, counsel for co-defendant, Theodore Persico. This motion was filed on May 25, 2011 *(ecf #262)* and long after the government first became aware of the allegations that supported the motion.  Indeed, an identical motion was filed on March 9, 2011, before the Honorable Brian M. Cogan, United States District Judge, and was based upon the same grounds. And, of course, the information that gave rise to the motion was known to the government at least a year before the motions were filed.

Of course, as the government may argue, the fact that there were open investigations made it impractical for this information to be publically disseminated. To be sure, this is a legitimate governmental concern.  However, prosecutorial decisions must yield to the issue here - the liberty of the accused and the fairness of the proceedings. At some point, the equities must turn in Mr. Garofalo's favor.  In short, the government cannot *always* get what it wants, whatever the cost to another person or to the fairness and integrity of the proceeding.

Nor was this the only time that the government has tried to have it both ways in this case.  When it became clear that Theodore Persico would need new counsel and that, given the particular complexity of *his* case and of *his* unique situation[5], it would not be feasible for him to be ready by the August 15, 2011 trial date, the proper remedy, as suggested by counsel, was to sever Persico and proceed to trial as scheduled with the

---

[5] Mr. Persico has another complex case pending in this district.

remaining defendants.  However, in a letter submission to this court dated June 1, 2011, the government opposed this suggestion.  In doing so, the attorney for the government cited the need for judicial economy and the added burden upon the government of having to try the case twice (*ecf #272)*.

The concerns expressed by the government in it's letter opposing a severance are, of course, legitimate considerations for the Court.  And, as this Court found at a hearing held on June 28, 2011, the need to avoid multiple trials in the same case outweighed both the defendants' and the public's right to a speedy trial in this case. Edward Garofalo opposed the request to reschedule the trial and demanded that his trial proceed as originally scheduled.  Nevertheless, the Court agreed to reschedule the trial as requested by the government.  While the Court certainly had the discretion to reschedule the trial, having done so, the proper remedy now is to revisit the detention order.

**B.     The Continuing Harm Suffered By Mr. Garofalo**

As the attorney for the government made clear in her June 1, 2011 letter request, in addition to the added costs, multiple trial in this case *"would also unfairly permit Persico, Jr. to preview the evidence against him."* This is, of course, a reasonable strategic consideration for the government. One that the government was free to advance in opposing Garofalo's motion to sever Theodore Persico from the case so that he could proceed to trial in August, as scheduled.  However, no consideration was given by the government as to what Garofalo's continued detention would mean to *him*. Or what added costs would be suffered by Garofalo and *his* family. This, of course, is the Court's responsibility.

The additional harm that is being suffered by Garofalo is hardly limited to the physical, emotional and financial loss of a husband and father of 3 young boys caused by his extended absence. As described in previous submissions, Mrs. Garofalo suffers from a number of ailments including acute anxiety disorder. This disorder requires daily medication to control.

Edward Garofalo himself suffers from significant medical conditions that have been ignored while he has been detained.  These disorders include a *strangulated hernia*[6] that can only be corrected surgically and scarring of the lungs.  The scarred lungs are a byproduct of his work operating a crane at "ground zero" in the days and months following 911.  Since 2006, he has been a participant in the *"World Trade Center Medical Monitoring Program"* established to provide medical treatment to first responders.[7]  Since his detention commenced in March of 2010, Mr. Garofalo has not been able to avail himself of the treatment options that are generally available to workers, like Garofalo, who suffer from a variety of ailments caused by the conditions in which they worked.

---

[6] A strangulated hernia occurs when the vascular supply of the bowel is compromised secondary to incarceration of hernia contents (http://emedicine.medscape.com/article/775630-overview#a0104).

[7] See attached confirmatory letter dated November 9, 2006, from World Trade Center Medical Monitoring Program.

      For all the foregoing reasons therefore, counsel most respectfully urges the Court to balance the equities in this matter by setting reasonable conditions of release.

      Thank you for your consideration.

Respectfully submitted,

*Steve Zissou*

Steve Zissou

SZ/nh
cc: all counsel by ecf w/o attachments